**People of the State of Illinois, Appellee,
v. James Williams, Appellant.**

**Gen. No. 51,282.**

First District, Fourth Division.

May 5, 1967.

Ragan and Robinson, of Chicago (Edmond W. Ragan, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Carl M. Walsh, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

After a bench trial the defendant, James Williams, was found guilty of Public Indecency * and was fined $500.

## Contentions on Appeal

1. Defendant was not proven guilty beyond a reasonable doubt;

2. Defendant's motion for a new trial was erroneously denied, ex parte, by a judge other than the trial judge.

## Evidence

According to the evidence adduced by the prosecution, on May 8, 1965, at approximately 7:15 a. m., the complaining witness, Juanita Moses, was walking her dog

---

* Illinois Revised Statutes, 1963, c 38, § 11–9 provides:

(a) Any person of the age of 17 years and upwards who performs any of the following acts in a public place commits a public indecency:

(1) An act of sexual intercourse; or

(2) An act of deviate sexual conduct; or

(3) A lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of the person; or

(4) A lewd fondling or caress of the body of another person of either sex.

(b) "Public place" for purposes of this Section means any place where the conduct may reasonably be expected to be viewed by others.

2

on Calumet Avenue near 72nd Street in Chicago, Illinois; a white Chevrolet pulled alongside her, she looked directly at the driver (whom she later identified as the defendant) and saw that he was undressed from the waist down and was "shaking his penis"; the witness turned around and started to return home but the defendant turned his car and pulled across her path; she again observed the defendant, in the same condition. Miss Moses then walked around the car and went home. She testified that she clearly observed the man and that she memorized the license number of the car and that it was NH 3332. Upon arriving home she reported the incident to her mother who notified the police. Miss Moses gave the police a description of the man and also the license number of the car. A week later she was called to the police station and identified the defendant from a lineup.

Officer Richard O'Connell testified that he was assigned to the case and found the aforesaid license number to be registered to defendant's mother, with whom he lived. He further stated that the defendant was arrested and identified from a lineup, consisting of the defendant and two other men who resembled him, by Juanita Moses.

Defendant, who was older than seventeen years of age, testified in his own behalf and denied the charge. He stated that he was employed at the post office but that he did not work on either May 7 or May 8; that he and a brother, Ronald, lived with their mother but another brother (Fritz) lived elsewhere; that on the evening of May 7 he was out with his brothers and Fritz was driving the white Chevrolet in question; and that Fritz dropped off defendant and Ronald at home at about 5:00 a. m. and drove off in the car. While defendant initially stated that he did not work on May 8, he later stated that he slept from 5:30 that morning until 1:30 in the afternoon, after which he went to work.

3

Defendant admitted being identified by Juanita Moses at the lineup but stated that the identification was made only after he was ordered to face the wall, and after a police officer "punched a finger in his back" and asked her "Is this the one?"

Defendant's alibi was corroborated in each detail by various members of his family. His brothers, Fritz and Ronald, testified that all three brothers were out the night before until 5:00 a. m. and that Fritz retained custody of the automobile. Mary Ann Williams, defendant's sister (who also lived in the same house as defendant) testified that she arrived home at approximately 5:00 a. m. and saw defendant arrive home at the same time; that she went to bed at about 7:00 a. m. and awoke only two hours later at 9:00 a. m., at which time she looked out the window and saw the white Chevrolet parked outside. Fritz Williams, however, testified that he kept the automobile parked outside his house (several blocks from defendant's residence) until 2:00 p. m. that afternoon. Defendant's mother testified that she was asleep in the living room and was awakened at 5:00 a. m. when Ronald and James returned home; that she heard Fritz drive away in the automobile; and that defendant was in bed until 1:30 on the afternoon of May 8.

### Opinion

██ The record shows that Juanita Moses had ample opportunity to view the defendant on the morning of May 8. He pulled his car alongside her and she looked directly at him; when she tried to walk away he pulled his car across her path and she looked directly at his face. The record shows that it was daylight at that time. In People v. Brinkley, 33 Ill2d 403, 405–406, 211 NE2d 730, the court stated:

Where the identification of an accused is at issue in a criminal case, we have constantly reiterated the rule that the testimony of one witness is suf-

ficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and viewed the accused under such circumstances as would permit a positive identification to be made.

■ ■ In the instant case the complaining witness viewed the defendant under circumstances as would permit a positive identification. The credibility of the witnesses is for the trial judge, as trier of fact, to determine. Prior to finding the defendant guilty the trial judge stated:

> The Court need not give any comment on its judgment, yet I would like to point out the fact that I was impressed with the demeanor of Juanita Moses, who is not a little girl who is easily shaken by an occurrence such as this, and who might be hesitant about an identification.

The credibility of the alibi testimony was also for the trier of fact. People v. Ault, 28 Ill2d 34, 190 NE2d 815.

■ Therefore, we find that the defendant was proven guilty beyond a reasonable doubt.

We also find no merit in defendant's contention that it was reversible error to deny, ex parte, his motion for a new trial. The motion was denied ex parte only because defendant and his counsel failed to appear on the date set for hearing thereon. Moreover, defendant's motion is not included as a part of the record on appeal. Therefore we are not apprised of the contents of the motion and it is not properly before this court.

**Holding on Appeal**
The judgment of the trial court is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.