THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES BROWN, Defendant-Appellant.

(No. 53286; ▮▮▮▮▮▮▮▮

First District—February 5, 1971.

*Rehearing denied March 9, 1971.*

Gerald W. Getty, Public Defender, of Chicago, (James Nettleton, Shelvin Singer, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Martin Moltz, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

In a jury trial defendant, James Brown, was convicted of armed robbery in violation of Section 18—2 of the Criminal Code (Ill. Rev. Stat. 1965, ch. 38, par. 18—2) and sentenced to a term of 20 to 25 years.

In a previous bench trial defendant was tried with two co-defendants, Roosevelt Willis and Willie Phillips, both of whom pleaded guilty. Roosevelt Willis was admitted to five years probation with nine months to be served in the House of Correction and Willie Phillips received a sentence of one to two years. James Brown was found guilty but was granted a new trial.

On appeal defendant contends that:

1. he was not proved guilty beyond a reasonable doubt;

2. prejudicial error was committed when a certificate of record inaccurately indicating a previous conviction of armed robbery rather than robbery was read to the jury; and

3. the sentence received by defendant is unfair.

The State presented two witnesses in its case in chief. Mrs. Irine Cole testified that she lived in a first floor apartment at 1555 South Trumbull. At approximately 2:00 A.M. on December 16, 1966, she was asleep in her apartment when she was aroused by a knock at her window. She went to the window and saw a man, at that time unknown to her, whose name she later learned to be Willie Roosevelt. He told her that he had a telegram for her from her cousin, Leverther Mitties. When she opened the door, Roosevelt entered accompanied by two other men, one of whom was defendant. Defendant took hold of her sleeve and held her. He took a butcher knife from the top of her television which he kept in his hand. While he held the witness in the washroom the other two men searched through her apartment. The men were in the apartment between one

half hour and one hour. Her living room was illuminated by a television light setting on the back of her television. She was able to observe the defendant's face in this light and to notice a large scar on his face, though she could not say on which side it appeared. She said that the scar made it appear that defendant had been cut and a piece of flesh had been left hanging down where it had healed. She was able to describe defendant's coat as a light thin three-quarter coat with black stripes and white dots. The men found and took from the apartment $1500 in cash, a gun and a radio.

On cross-examination the witness stated that she did not know exactly how long or with which hand defendant held her arm. She also was uncertain about various details of defendant's appearance, including his height, the side of his face which bore the scar, and the color of his shirt and trousers. She testified that she was very frightened during the robbery and that the single source of light in her apartment was a small television light.

The second witness for the State was James Adams, the son of Mrs. Cole. He stated that he was absent from his mother's home until approximately 9:30 A.M. on the morning of December 16th. He found the apartment disordered and $1500 in cash, a .32 caliber revolver and a radio missing at that time.

Roosevelt Willis who was indicted with Willie Phillips and defendant for the robbery of Mrs. Cole was the first of four defense witnesses. He was under detention in the House of Correction at the time of his testimony. He testified that he did take part in the robbery with Phillips but that the third man involved was named Bey. On direct examination he stated that he knew defendant, but that he had never known him by the name "Bey" and that defendant had not participated in the robbery of Mrs. Cole. On cross-examination, the witness was asked if defendant had any other nickname and he answered: "Yes. We called him Bey." Later he said that he had taken that name from a piece of paper which he had seen in Court.

Defendant testified in his own behalf. He stated that on the night in question he was at his home at 1414 South Homan in the presence of his brother and his brother's wife and children from 10:30 P.M. on. He stated that he watched television until about 12:30 A.M. when he went to bed. He did not leave his bedroom until 8:00 or 9:00 A.M. He also testified that at his first trial Mrs. Cole had stated that the weapon he had held was a screwdriver rather than the knife she described in the instant trial.

Timothy Brown, defendant's brother, also testified. He corroborated the alibi testimony of defendant in detail.

The final defense witness was Evelyn Reed, defendant's mother. She

testified that she spoke with Mrs. Cole in Judge Mejda's courtroom during defendant's first trial. During their conversation, the witness told Mrs. Cole that she was defendant's mother. Mrs. Cole answered, "Yes, I know. That old Brown came in my house. I saw that old Brown. I remember him well." "I remembered James's looks. He was a little short guy with his hair conked." Mrs. Reed testified that "conked" meant "waved." She stated that her son had never had his hair "conked" or waved. The witness stated that she said to Mrs. Cole, "Lady, my son never wore his hair conked in his life." Mrs. Cole answered, "Well, I'm just going to tell you the truth. I was so nervous and scared, I couldn't identify nobody."

Defendant's first argument on appeal is that he was not proved guilty beyond a reasonable doubt due to uncertainty in the identification evidence. Defendant calls attention to Mrs. Cole's statement on direct examination that the robbers were in her house from one half hour to an hour and her statement on cross-examination that she "didn't know exactly how long" defendant was beside her holding her arm. Attention is also called to Mrs. Cole's uncertainty about defendant's height, her inability to describe the color of his shirt, and to determine whether he wore black or blue pants, and her failure to recall which side of defendant's face bore a scar. Defendant places particular significance upon Mrs. Cole's testimony that she was very scared at the time of the robbery and that the only light in her apartment came from "a little, bitty radio light, TV light." It is argued that these factors explain Mrs. Cole's failure to recall certain details and indicate the unreliability of her identification of defendant. This, defendant contends, taken in connection with the alibi evidence, requires reversal of the judgment.

■■ *People v. Marshall,* 74 Ill.App.2d 483, is cited by defendant in support of his contention. This was a robbery case in which the identifying witness apparently had a quite brief opportunity to observe the defendant and gave the police a description of the robber which differed substantially from the appearance of the defendant. In reversing the conviction the Appellate Court said: "In the case at bar, the witness' uncertainty is evidence that he did not carefully observe the robber's face. He admitted as much by his explanation for not knowing whether the robber had a mustache: 'I didn't look that close.' " We believe that *People v. Marshall* is distinguishable from the present case. Mrs. Cole's testimony indicated that the robber was beside her holding her by the arm for at least a period of several minutes giving her ample time to observe his face. Though her testimony was that the room was illuminated by only one small light. Mrs. Cole was able to describe in some detail the coat worn by the robber and the unusual scar upon his face.

The fact of her failure to observe or recall such details as the color of defendant's pants or which hand he used to hold her arm does not, of itself, demonstrate the unreliability of the observations which she did make.

We believe that the controlling principle is stated in *People v. Brinkley*, 33 Ill.2d 403, 405-406:

"Where the identification of an accused is at issue in a criminal case, we have constantly reiterated the rule that the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and viewed the accused under such circumstances as would permit a positive identification to be made."

The conditions of observation in the instant case are not such as to enable this court to hold that they would not permit a positive identification to be made and thus raise a reasonable doubt as to defendant's guilt.

The credibility of the identifying witness and the alibi witnesses is, of course, a matter for the trier of fact. See, for example, *People v. Williams*, 84 Ill.App.2d 1. We believe that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

Defendant's second argument on appeal is that prejudicial error was committed when the parties stipulated to a court record indicating defendant's plea of guilty to a charge of armed robbery in 1962. It was later determined that that record was inaccurate in that the charge had in fact been robbery rather than armed robbery.

Defendant cites *People v. Decker*, 310 Ill. 234, and *People v. Shook*, 35 Ill.2d 597. In *People v. Decker* a burglary conviction was reversed by the Supreme Court because of the prejudicial misconduct of the prosecution in intimating before the jury that the defendant had previously been charged with a crime similar to that for which he was being tried, where, in fact, there was no evidence indicating this to be true. In *People v. Shook* the Supreme Court reversed a conviction for burglary for the reason that a prior conviction which was used for impeachment of defendant had been voided by a *habeas corpus* proceeding.

■■ In the case at bar a certificate evidencing a valid conviction for robbery had been altered so that it inaccurately reflected a conviction for armed robbery. This incorrect certificate was presented to the court and the incorrect conviction was argued to the jury by the assistant State's Attorney in his closing remarks. We believe it reasonable to conclude that this evidence of a more serious conviction may have seriously prejudiced defendant's credibility as a witness and thus fatally weakened his case in the eyes of the jury. We reach this decision particularly because the incorrect record of conviction was identical in character to the

crime for which defendant was on trial. Limiting the purpose of its admissibility to the matter of impeachment would not have eliminated from the minds of the jurors the similarity of the prior conviction, which thus was unfairly prejudicial to defendant. Defendant was also prejudiced in the matter of his credibility, because he had testified on cross-examination that, while he had been previously convicted of robbery, the charge had been for purse-snatching and he had not been charged with having been armed. The certificate which the State introduced on rebuttal thus appeared to have established that defendant had lied in his testimony, and might therefore, have been considered unworthy of belief as a witness in other respects.

The judgment of the Circuit Court must therefore be reversed and the cause remanded for a new trial.

Reversal of the judgment makes it unnecessary for us to consider defendant's third argument.

Reversed and remanded.

ENGLISH, P. J., and DRUCKER, J., concur.