THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PRENTICE CHARLES ORR, Defendant-Appellant.

Third District   No. 76-32

Opinion filed February 10, 1977.

Robert Agostinelli and Verlin Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Keefe, State's Attorney, of Rock Island (James E. Hinterlong and Linda Vodar, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by defendant Prentice Charles Orr from a judgment of the Circuit Court of Rock Island County finding defendant guilty of attempt (murder). Defendant was indicted by the Rock Island County grand jury for both the offenses of attempt murder, in violation of section 8—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—4) and of aggravated battery in violation of section 12—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—4). Defendant was sentenced to a term of not less than 6 nor more than 12 years on the attempt (murder) judgment.

On appeal in this case, defendant contends that (1) the State failed to prove defendant guilty beyond a reasonable doubt, (2) the trial court erroneously allowed the introduction of certain allegedly irrelevant, inflammatory, and prejudicial evidence, (3) the trial court erred in allowing the State to question a defense witness concerning an allegedly inconsistent prior statement, where the State subsequently failed to offer

proof that the witness ever made such statement, (4) the trial court erred in admitting into evidence a prior indictment charging defendant with the offenses of theft and burglary, where the defendant was convicted, apparently on a plea of guilty, of the offense of theft only, and (5) the trial court erroneously instructed the jury on the requisite mental state for the offense of attempt (murder).

On February 3, 1975, Rock Island police officers responded to a call from a shooting victim and discovered the complainant, Mary Sanchez, lying on the living room floor of her home, suffering from a bullet wound in her left chest. One of the officers asked Mary Sanchez who had shot her, and she responded that she had been shot in the alley behind her house by a man wearing red pants. At that time she did not state that she knew the identity of the perpetrator. The police had come to her home in response to her call for help. She was taken to a hospital accompanied by a police officer. The officer returned to the Sanchez residence and conducted a search of the house and of the alley and surrounding area. No blood, bullet, shell casing, or weapon was ever found in the alley or in the yard by the police. The officer discovered a loaded pistol in the house but, based on his experience, determined that the weapon had not been fired recently. During the search, the officer learned from the mother of complainant that another gun was usually kept under the mattress of the bed in complainant's residence, but the police did not find this weapon during their search.

Following the February 3 shooting, Mary Sanchez was hospitalized for 11 days before she was released, and later returned to the hospital for an additional 2 days. When the investigating detective first spoke to Mary Sanchez at the hospital, she stated that it hurt her to talk and that she would tell him who did it later. When the officer subsequently returned to the hospital, Sanchez told him that she would be all right, and would tell him what had happened after she was released from the hospital. Mary Sanchez said she told the police about the defendant two or three weeks after being shot and that she had been unconscious for a time and very ill as a result of the gunshot wound. She stated she delayed naming the defendant to the police because she was afraid and that she was still somewhat afraid when she did identify defendant as the one who shot her. She said that she told her mother who shot her.

After Mary Sanchez had been released from the hospital she went to the police station at the request of the officer and told him that it was the defendant who had shot her. On March 12, 1975, a complaint was filed in the Circuit Court of Rock Island County, in which Mary Sanchez charged that defendant Orr committed the offense of shooting her in the chest with a gun.

At the trial, the complaining witness testified to the events surrounding the shooting. She stated that at approximately 10 minutes after three in the

afternoon of February 3, 1975, she left her home en route to a tavern for a soda. As she entered the alley behind her residence, Sanchez was confronted by two of her acquaintances, Ronald Hearn and defendant Orr. Although she had been acquainted with the defendant for 10 years, Sanchez testified that she had not seen him in over a year. Mary Sanchez had, however, talked to Hearn less than one half hour before the confrontation. According to Sanchez, the defendant was standing in the alley with a gun in his hand, and said to her, "I told you so." Having no explanation for the defendant's statement, and thinking the gun was a joke, Sanchez responded kiddingly, referring to the defendant with an obscenity. Sanchez testified that the defendant then shot her from a distance of about 6 inches and that she fell to the ground in the alley. She said that the defendant then emptied the shell casing from the gun while being over her, and that the defendant and Hearn then walked away. While she was bleeding very rapidly, Sanchez picked up the discharged shell casing, walked the distance of about half a block to her house, and kicked on the back door of the house until someone let her in. Sanchez then called the police to report the shooting and fell to the floor of her living room, where she was found by the investigating officers. She testified that she lost the shell casing while trying to get into her house, and that after her release from the hospital she rediscovered the casing in her yard. She said that she had called the police about the rediscovered casing, but that at the time of the trial she had lost the casing again.

Sanchez stated that she delayed in reporting defendant's name to the police because she was afraid for herself and her family, from the time of the shooting through the time of the trial. She further testified that she had earlier told her mother who had shot her.

At the trial, the State introduced expert evidence concerning the nature and extent of Sanchez' injuries, which were very serious. According to the State's witness, Sanchez' wound could have been fatal had the bleeding not been stopped. The State also introduced into evidence, over the objection of defense counsel, the blood-stained shirt and jacket worn by Sanchez at the time of the shooting.

Ron Hearn testified as a witness for the defense. Hearn testified, as had Sanchez, that he paid Sanchez a friendly visit during her hospitalization. Hearn, however, contradicted Sanchez' account of the events of February 3. While Hearn agreed that he had talked to Sanchez shortly before three on the afternoon in question, he testified that he later drove by her house and observed her lying on the ground, trying to get up. Hearn testified that he, thinking she had merely fallen down, continued on his way. During re-cross-examination, the following testimony took place in the examination of Hearn:

> "Q. Isn't it a fact that you made a statement to both [Mary Sanchez and her mother, during your visit to the hospital], [that]

Prentice Orr shot her because there was a contract out on her and he was trying to fulfill the contract.

A. No.

Q. That is not a correct statement?

A. No.

OBJECTION: It is sort of argumentative that he is raising with the witness. He appears to be out to prejudice the defendant. I ask the jury be instructed to disregard * * *

THE COURT: He can inquire into any alleged conversation. Objection overruled."

The defendant's mother and cousin both testified that the defendant, who was taking prescribed medication for the treatment of injuries sustained in an automobile accident the preceding December, had been resting in his bedroom in his family's home from 11:20 a.m. to 3:30 p.m. on February 3, 1975. At 3:30 that afternoon, the defendant's younger sister came home from school with the news that Sanchez had been shot.

The defendant testified in his own behalf. He stated that although he did see Sanchez on occasion, he had not talked to her for over a year and a half. He testified that he spent the afternoon of February 3, 1975, resting in his home. Defendant further stated that he had not seen Hearn on February 3, 1975, and that he had not communicated with Hearn since they met in the county jail during the previous year.

Over defense counsel's objection, certified official transcripts of the defendant's three prior convictions were admitted into evidence. The transcripts, consisting of some 40 pages of material, reflect the defendant's prior convictions for unlawful delivery of a controlled substance, theft, and deceptive practices. The transcript of the theft conviction related that the defendant was initially charged with both theft and burglary, but that the defendant pleaded guilty to the theft charge but was neither tried nor convicted on the burglary charge.

At the jury instruction conference, the State tendered an instruction containing a comprehensive definition of murder. The defense objected to this instruction, and offered an instruction which defined the requisite mental state for murder as intending to kill or do great bodily harm. The specific language will be referred to later in this opinion.

On September 30, 1975, the jury returned a verdict of guilty of attempt (murder) and aggravated battery.

Defendant's first contention on this appeal is that, in light of Mary Sanchez' delay in identifying the defendant, the State failed to prove defendant's guilt beyond a reasonable doubt. We note that, while Sanchez did delay in identifying defendant, she testified that she was afraid and also that her physical condition was very bad during that period. It is not disputed that Sanchez had sufficient opportunity to view her assailant and that she was acquainted with defendant prior to the shooting. Sanchez'

testimony was the only evidence at the trial which identified the defendant as the perpetrator of the offense. Defendant had also produced at the trial the alibi testimony to which we have referred.

The court in *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631, outlined the basis upon which a court of review deals with factual issues of the type now confronting us. In that case, the court stated:

" '[W]e may not substitute our judgment for that of a jury on questions involving the weight of the evidence or the credibility of the witnesses [citations], and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt.' [Citations.] 'It is also undisputed in Illinois that where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. [Citations.]' "

■■ Under the circumstances which confront us in the present case, the delay in naming the defendant as her attacker would affect the weight of her identification but this evaluation was properly made by the jury in the trial court.

We note that in the instant case, Sanchez was hospitalized, and at times was unconscious, during part of her period of delay in naming the defendant. Further, she testified that she delayed because of fear for herself and her family since defendant and Hearn were still free. Whether such testimony should be accepted was a question for the jury as well as the circumstance of her delay in identifying the defendant specifically.

■■ Defendant further relies, in asserting insufficiency of the evidence to sustain the conviction, on the alibi testimony which was produced at the trial. While defendant produced an alibi, none of the alibi witnesses were truly disinterested. Similarly, the identification of defendant was delayed although it was delayed for a presumably plausible reason. The resolution of this issue was properly left to the jury and the determination of the jury on the issue will not be disturbed on appeal.

■■ Defendant next argues that the trial court erred in admitting into evidence, over objection of defendant, the blood-stained shirt and jacket worn by Sanchez at the time of the shooting. Defendant contends that, in light of the testimony by Sanchez, police officers, and a medical doctor as to the nature and extent of Sanchez' injuries, the shirt and the jacket were of little probative value, and inflammatory and prejudicial to the defendant. In the instant case, defendant did contest the act of shooting Sanchez. The evidence which was produced on behalf of defendant, might have allowed the jury to infer that since no blood was found at the scene of the shooting, defendant's testimony may not have been credible. The bloody shirt and jacket tended to support the Sanchez testimony that

the reason no blood was found at the scene of the shooting was that the blood was soaked up by the shirt and jacket. The evidence thus had probative value and tended to corroborate Sanchez' testimony with respect to the offense. The trial court has reasonable discretion in the admission of such evidence and the court's discretion was not abused in this case. See *People v. Tilley* (1952), 411 Ill. 473, 104 N.E.2d 499.

Defendant next argues that reversible error was committed by the admission into evidence of the transcripts of his three prior convictions, for unlawful delivery of a controlled substance, theft, and deceptive practices. Defendant's contention is premised on the fact that the transcript of the theft conviction contained at least one reference that defendant was initially charged with theft and burglary and one reference that he was charged by a two-count indictment. In that proceeding, defendant pleaded guilty to theft and was not prosecuted for burglary.

■■ It is clear that the evidence of defendant's prior convictions was properly admitted, and that the evidence of the burglary indictment was improperly admitted. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) The official transcripts of the convictions, however, introduced at the trial, comprised more than 40 pages, and defendant now points to only two references to another charge within those 40 pages. There is no reasonable probability that the evidence complained of contributed to the defendant's conviction. We conclude that the erroneous admission of the reference to the burglary charge was harmless error. *People v. Bracey* (1972), 51 Ill. 2d 514, 519, 283 N.E.2d 685.

A much more significant issue is raised by defendant in his contention that it was error to allow the testimony and questioning of witness Hearn when questioned about a conversation in which he was asked whether he informed Sanchez that defendant shot her in an attempt to fulfill a "contract" that was "out" on her. Defendant argues that it was error to allow this testimony when the State did not subsequently introduce evidence to contradict Hearn's denial of the statement. The State emphasizes that the initial objection to the question posed by the State's Attorney went to the argumentative nature of the questions and cites *People v. Williams* (1st Dist. 1969), 105 Ill. App. 2d 25, 34, 245 N.E.2d 17, where the court points out that a failure to prove impeachment does not of necessity constitute reversible error. The *Williams* court, however, specified that once the foundation for impeachment by prior inconsistent statement has been laid, it is incumbent upon counsel, having laid such foundation, to offer proof of the alleged impeaching statements. The State's failure to offer proof of the alleged inconsistent statement, after the denial by the witness that he made such statement, was clearly prejudicial because the alleged statement was the only potential evidence of a motive which was offered by the prosecution. If this was a tactical move, the absence of the proof of a foundation could result in infringement of the

right to a fair trial (*People v. Wallenberg* (1962), 24 Ill. 2d 350, 353, 181 N.E.2d 143) and may constitute reversible error. (*People v. Irish* (1st Dist. 1966), 77 Ill. App. 2d 67, 222 N.E.2d 114; *People v. Payton* (1st Dist. 1967), 82 Ill. App. 2d 51, 227 N.E.2d 87.) Unrestrained use of questions of this type could be sanctioning improper tactics for the purpose of sowing suspicion in the minds of the jurors and substituting insinuation for proof.

■■ The instant case is a strange case, in the sense that, while the identification of defendant by the complaining witness was clearly established, there was contradictory evidence of the event by both the defendant and the witness Hearn (who was stated to have accompanied Orr at the time of the shooting) and there was also evidence of an alibi. Since there was no further evidence introduced on this subject and no action was taken to dispel the potential prejudice which may have resulted from such questioning, we believe that such procedure constitutes reversible error and requires remandment of this cause for new trial. See *People v. Mack* (5th Dist. 1970), 120 Ill. App. 2d 149, 256 N.E.2d 501.

We will make some observation, however, as to another issue raised by defendant who argues that the trial court erroneously instructed the jury on the mental state required for conviction of attempt (murder). It is contended that the instruction permitted the charge to be sustained upon proof of an allegation that defendant committed an act toward the complainant which allegedly constituted a substantial step toward commission of the offense of murder, knowing that such act created a strong probability of great bodily harm to that individual. It is pointed out that recently, in *People v. Muir* (2d Dist. 1976), 38 Ill. App. 3d 1051, 349 N.E.2d 423, and in *People v. Trinkle* (4th Dist. 1976), 40 Ill. App. 3d 730, 353 N.E.2d 18, the Illinois Appellate Court has ruled that the inclusion of the words "great bodily harm" in an indictment and jury instructions, without charging that the defendant had the specific intent to kill, constitutes reversible error. It has also been called to our attention that the Illinois Supreme Court has granted leave to appeal in *Muir*, and that a petition for leave to appeal has been filed in the *Trinkle* case. For such reason we will not assert any conclusions as to the contention made by defendant on the instruction issue, since the Supreme Court will have determined this issue in the *Muir* case prior to retrial in this case.

For the reasons stated, therefore, this cause is reversed and remanded to the Circuit Court of Rock Island County for a new trial.

Reversed and remanded.

STOUDER and SCOTT, JJ., concur.