THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN R. GOMEZ, Defendant-Appellant.

First District (1st Division)  No. 78-2109

Opinion filed January 14, 1980.

Julius Lucius Echeles and Frederick F. Cohn, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Michael M. Lorge, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, John R. Gomez (defendant) was found guilty of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2) and sentenced to 8 years. Defendant appeals.

Joseph Bradtke and Steven Treskow testified that on March 17, 1977, they were employed at Meier's Standard Gas Station. At approximately 11:30 p.m., defendant entered the station and asked where the washroom was located. Defendant left the lobby of the station and returned minutes later. Defendant asked Mr. Treskow for some change. Mr. Treskow told defendant to speak with Mr. Bradtke who was in the bay area of the station.

Defendant approached Mr. Bradtke and requested change for a $5 bill. Defendant received the change, turned away from Mr. Bradtke and then turned toward him holding a gun. Defendant ordered Mr. Bradtke into the back room and pushed him against some lockers.

Mr. Treskow entered the back room and was ordered to stand over near Mr. Bradtke. Defendant then demanded money from the complainants. Complainants gave defendant the money they carried in their pockets, approximately $400. Defendant then ran out of the station.

Mr. Bradtke picked up a broom and started chasing defendant. Mr. Bradtke caught up with defendant as defendant ran down a side street and attempted to hide in a blue and white Mustang automobile. Mr. Bradtke threw a bottle at the car but defendant drove away. The incident was reported to the police.

Both complaining witnesses testified all areas of the gas station were brightly lighted with fluorescent tubing and they viewed defendant's face for several seconds.

On April 5, 1977, both complainants identified defendant from a lineup photograph shown to them by police officer Moreth. On April 6, 1977, Mr. Bradtke viewed a lineup and positively identified defendant as the armed robber. Both complainants made positive in-court identifications of the defendant.

On direct examination Mr. Bradtke testified defendant called him the night before trial and told complainant not to testify. Defendant said that it (the robbery) was a small crime and he could be sent to jail for 5 to 6 years. Defendant offered to give the complainants a ride to court the next day. When Mr. Bradtke refused to accept the invitation, defendant asked the complainant to meet him in the cafeteria before trial. Mr. Bradtke did not respond and defendant told him to "think it over and we'll talk about it tomorrow in court."

Mr. Bradtke testified that when he and Mr. Treskow arrived at the State's Attorney's office next morning, Mr. Bradtke told the prosecutors about this phone conversation with the defendant. Mr. Bradtke further testified that the State's Attorney told the complainants to stand in the hall before trial began and see if defendant approached them. They did so.

Defendant approached the complainants and asked what they had decided to do. He told complainants about "another station he had robbed and he got caught in the act." Complainants told defendant they intended to testify against him.

Police officer Konior testified that on March 22, 1977, he stopped the defendant while driving a white and blue Mustang automobile and arrested him.

Joseph Leone, Jr., testified he and defendant had attended a Jethro Tull concert on March 17, 1979. He testified that after the concert was over, he and defendant went to two bars and he dropped defendant off at his house at about 2 a.m. He stated defendant was never out of his sight during the evening. Another friend of the defendant, Robert Sipusich, testified he saw defendant and Mr. Leone at the concert at approximately 11 p.m.

Defendant testified to substantially these same facts. He denied any connection with the armed robbery. He further testified he owned a blue and white Mustang automobile. He denied having a conversation with Mr. Bradtke the night before the trial. He admitted speaking to the complainants in the hall, but did not testify to the content of that conversation.

In this court, defendant contends the jury was improperly advised he had previously been charged with armed robbery; he was prejudiced by the inadvertent reading of a withdrawn instruction by the court to the jury; he was denied his constitutional right to counsel as a result of the admission into evidence of the alleged conversation between defendant and the complainant; he was prejudiced by an improper prosecutorial closing argument and his identification was the result of suggestive identification procedure.

## I.

At trial, over a defense objection, a certified statement of defendant's prior conviction for robbery was read to the jury for purposes of impeachment. The statement referred to the original charge of armed robbery. Defendant contends reversible error occurred because the jury was advised he was charged with an offense for which he was not convicted.

The instant action is analogous to *People v. Orr* (1977), 45 Ill. App. 3d 660, 359 N.E.2d 1237. In *Orr*, certified official transcripts of defendant's

prior convictions were admitted into evidence. One transcript contained information that defendant was initially charged with both theft and burglary although he was not tried or convicted on the burglary charge. This court held there was "no reasonable probability that the evidence complained of contributed to the defendant's conviction." *Orr*, 45 Ill. App. 3d 660, 666.

■■ In the instant action, it was error to present evidence of an offense of which defendant was not convicted. However, here, as in *Orr*, there is "no reasonable probability that the evidence complained of contributed to the defendant's conviction." (*Orr*, 45 Ill. App. 3d 660, 666.) This is particularly true in the instant case where the evidence against defendant "was so strongly convincing of his guilt beyond reasonable doubt." *People v. Lucas* (1978), 58 Ill. App. 3d 541, 546, 374 N.E.2d 884.

In instances such as this which involve "only an alleged error in the admission of evidence, and no constitutional error is involved * * *. * * * we are not concerned with the 'harmless error beyond a reasonable doubt' test of *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824. We are instead concerned with whether the competent evidence is sufficient to prove the defendant's guilt beyond a reasonable doubt." *People v. Bailey* (1975), 60 Ill. 2d 37, 46-47, 322 N.E.2d 804 (Ryan, J., dissenting).

The cases relied upon by defendant in this area are distinguishable from the instant case. In *People v. Patterson* (1976), 44 Ill. App. 3d 894, 899, 358 N.E.2d 1164, the prosecutor repeatedly made references to defendant's conviction for armed robbery when defendant had only been convicted of robbery. These "prejudicial insinuations" were objected to by defense counsel. The objections were sustained by the trial judge. This court characterized the record in *Patterson* as reflecting "multiple violations of the fundamental principle that statements of fact not based upon the evidence may not properly be argued before a jury." (*Patterson*, 44 Ill. App. 3d 894, 896.) The record in the instant action does not indicate the type of flagrant and repetitive abuses evidenced in *Patterson*.

In *People v. Brown* (1971), 131 Ill. App. 2d 5, 268 N.E.2d 202, an incorrect certificate which indicated a conviction for armed robbery was presented to the trial court. The defendant had actually been convicted of robbery. This court reversed defendant's conviction and remanded for a new trial. We concluded that defendant's credibility had been prejudiced both by the evidence of the more serious offense and by the apparent contradiction between his testimony and the certified transcript of defendant's prior conviction. In the case before us, there is no testimony which could have been contradicted by the certificate presented at trial.

*People v. Gregory* (1961), 22 Ill. 2d 601, 177 N.E.2d 120, involved the prejudicial effect of the admission into evidence of the confession of one

defendant which implicated a codefendant and is not applicable to the instant action.

## II.

At trial, the court inadvertently read an instruction (Illinois Pattern Jury Instructions, Criminal, No. 3.14 (1968), (hereinafter cited as IPI Criminal)) to the jury which had been tendered by the defendant but had been subsequently withdrawn. Defendant did not object to the instruction until the jury had begun its deliberation. The trial court then immediately recalled the jury and fully admonished them that the instruction was given to them in error and should be disregarded. The incorrect written instruction was never given to the jury.

■■ Thus, the trial judge responded quickly to the situation and clearly advised the jury that the instruction should be disregarded. This prompt action coupled with the fact that only correct, written instructions had been submitted to the jury renders this error harmless. *People v. Lewis* (1979), 75 Ill. App. 3d 259, 286, 393 N.E.2d 1098.

## III.

■■ Defendant contends his right to counsel was denied by admission into evidence of alleged conversations between defendant and a victim of the crime. Defendant argues that the instant action is analogous to *Massiah v. United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199. In *Massiah*, defendant was charged with violating Federal narcotics laws. After defendant had been indicted, Federal agents worked with a co-defendant who agreed to place electronic devices in his car to record conversations with the defendant. Defendant made admissions of guilt to the co-defendant which were recorded and subsequently admitted into evidence at trial. The Supreme Court reversed defendant's conviction holding that he had been denied his right to effective assistance of counsel. The court concluded that defendant's constitutional rights had been violated "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." *Massiah*, 377 U.S. 201, 206, 12 L. Ed. 2d 246, 250, 84 S. Ct. 1199.

It is this element of deliberate elicitation which is absent from the instant case. The State's Attorney did not instigate the initial phone call made by the defendant to Mr. Bradtke. After this phone call had been made, the complainants were not instructed to gather additional information from the defendant. Rather, they were merely told to "come up here [in the hall outside the courtroom] and stand around."

The instant action is more closely analogous to *People v. Milani* (1968), 39 Ill. 2d 22, 233 N.E.2d 398, *cert. denied* (1968), 393 U.S. 865, 21

714

L. Ed. 134, 89 S. Ct. 148; *People v. Georgev* (1967), 38 Ill. 2d 165, 230 N.E.2d 851, *cert. denied* (1968), 390 U.S. 998, 20 L. Ed. 2d 97, 88 S. Ct. 1202; or *People v. Smrekar* (1979), 68 Ill. App. 3d 379, 385 N.E.2d 848, *appeal denied* (1979), 75 Ill. 2d 593. In *Smrekar* and *Milani*, defendants, while held in jail pending trial, confessed their guilt to jailmates. In *Georgev*, an admission of guilt was made both to jailmates and to the sheriff in the lockup. In all the instances the jailmates testified at trial. In affirming defendant's conviction in *Milani* (39 Ill. 2d 22, 26), the supreme court summed up these cases by stating:

> "In the instant case there is no evidence of deliberate elicitation from the defendant by Devens [a fellow inmate] of incriminating facts concerning the murder; rather Milani volunteered a confession of his criminal acts to his confidant who was at the time of the initial discussion in no way associated with the investigative authorities. It is appropriate in this regard to note that while the Federal agents were receptive to Devens's periodic reports, the record is devoid of any evidence that they exercised control over the informer or gave him instructions to guide his conduct. We do not believe that *Massiah* or any later case prohibits the use of volunteered incriminatory statements which are gathered because of the co-operativeness of an informer in whom a criminal has misplaced his confidence, for the *Massiah* court cautioned, 'We do not question that in this case, as in many cases, it was entirely proper to continue an investigation of the suspected criminal activities of the defendant and his alleged confederates, even though the defendant had already been indicted.' 377 U.S. at p. 207."

### IV.

Defendant next contends he was prejudiced by the prosecution's closing argument which erroneously supported the credibility of the prosecutor's witnesses. Defendant complains of the statement by the prosecutor, "I couldn't believe what we heard when Joe Bradtke came down here". This argument was made with reference to the phone call received by Bradtke from the defendant.

Prosecutors are allowed "wide latitude" in presenting closing arguments. (*People v. Dykes* (1978), 66 Ill. App. 3d 403, 407, 383 N.E.2d 1210.) Moreover, "it is always proper for a prosecutor to comment in final argument on facts appearing in the proof, or on legitimate inferences which can be deduced from the evidence." (*People v. Mitchell* (1975), 35 Ill. App. 3d 151, 164, 341 N.E.2d 153, *appeal denied* (1975), 60 Ill. 2d 599.) It is clear this closing argument did not result in "substantial prejudice to the accused" (*People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200);

did not constitute " 'a material factor in the conviction \* \* \*' "; and it cannot be said that " 'the verdict would have been different had the improper closing argument not been made \* \* \*'." *People v. Singletary* (1979), 73 Ill. App. 3d 239, 253-54, 391 N.E.2d 440, and cases cited therein.

■ In addition, defendant's counsel objected immediately to these remarks of the prosecutor. The trial court sustained the objection. This "act of promptly sustaining the objection and instructing the jury to disregard such argument has usually been viewed as sufficient to cure any prejudice." (*Baptist*, 76 Ill. 2d 19, 30, and cases there cited.) We judge, in the case at bar, that any possibility of prejudice made was thus avoided. Furthermore, the jury was told twice by the trial court that they should disregard questions which were "withdrawn or to which objections were sustained." Also IPI Criminal No. 1.03, which states that closing arguments not based on the evidence should be disregarded and that such arguments are not evidence, was given to the jury. (*Singletary*, 73 Ill. App. 3d 239, 254; and *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 123, 390 N.E.2d 1339.) In our opinion, no possibility of prejudice remained.

■ Entirely aside from the above decisive factors, assuming that the assailed argument constituted error, it is necessarily classified as harmless error because of the strength of the evidence against defendant. *Olejniczak*, 73 Ill. App. 3d 112, 124.

## V.

Finally, defendant contends his identification was the result of suggestive identification procedure. Defendant argues the photographs shown to complainants were suggestive because he was the only person with a mustache and not wearing a shirt or jacket. Defendant wore only a T-shirt. Defendant further argues that the actual lineup viewed on April 6, 1977, was suggestive because defendant "is totally dissimilar in appearance to anyone else in the lineup."

In regard to defendant's first contention, we cannot agree that the lineups were factually subject to this criticism. In *People v. Jones* (1979), 70 Ill. App. 3d 338, 343, 387 N.E.2d 1010, this court rejected a similar argument that a lineup was highly suggestive because defendant was the only person not wearing shoes. We concluded that "this fact alone did not make the lineup 'so suggestive or prejudicial as to fatally taint the identification.' " *Jones*, 70 Ill. App. 3d 338, 343, and cases cited therein.

■ The Illinois Supreme Court held in *People v. Allender* (1977), 69 Ill. 2d 38, 42, 370 N.E.2d 509, " 'that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " We do not find

the instant identification procedure to be impermissibly suggestive in any manner. The photographs which are a part of this record support our conclusion. We reject defendant's assertion that he was prejudiced in any manner by the composition of the lineups in which he appeared. In our opinion defendant has failed to demonstrate that the lineup procedures here were unfair. *People v. Brown* (1972), 52 Ill. 2d 94, 100, 285 N.E.2d 1.

■■ Assuming, *arguendo*, any impropriety in the identification procedure, the crucial issue is whether the in-court identification had an origin independent of any possibly suggestive procedures. *Allender*, 69 Ill. 2d 38, 43.

In the instant case both complainants testified they viewed defendant under good lighting conditions and at close range during the course of the robbery. Both complainants identified defendant without hesitation from the lineup photograph. We find the identification well within the criteria established in *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 93 S. Ct. 375, as cited in *People v. Manion* (1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.