THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VINCENT POLISZCZUK, Defendant-Appellant.

First District (2nd Division)   No. 85—1252

Opinion filed January 13, 1987.—Rehearing denied February 3, 1987.

Adam Burgeois and Victor D. Quilici, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula Carstensen, and Marguerite Quinn, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Appellant, Vincent Poliszczuk, his codefendant Bryan Magnus, and Jorge Carrion were arrested and charged with the offense of residential burglary. Prior to trial, Carrion's case was severed from that of the other two accused. Poliszczuk and Magnus proceeded to trial, in which they were represented as codefendants by the same attorney. A jury verdict was returned finding Poliszczuk guilty on the basis of accountability, and he was subsequently sentenced to a four-year term of imprisonment.

On appeal, Poliszczuk presents four issues for review. Initially, he argues that he was denied effective assistance of counsel due to a conflict of interest which arose between himself and his codefendant, Bryan Magnus. He next contends that the initial police stop of his automobile for alleged minor traffic violations (failure to obey two stop signs) was improper as a subterfuge to a search based on mere suspicion and that all evidence obtained as a result of the stop should have been suppressed. Poliszczuk also questions whether he was proved guilty beyond a reasonable doubt. Finally, he maintains that his conviction was improper because suppressed evidence was admitted into evidence without objection by his counsel. We affirm the decision of the trial court.

The testimony at trial was that William McGarry and James Hennelly were Chicago police department burglary detectives, each with approximately 17 years of experience. At approximately 2 p.m. on July 11, 1984, they were driving northbound on Orchard Street in an unmarked car patrolling a residential area which had recently experienced an increase in burglaries. Poliszczuk was driving a car and Magnus was his passenger when Detective McGarry observed them coming out of a side street into Orchard Street without stopping at a clearly visible stop sign. As the car was pulling onto Orchard, Detective Hennelly noticed that there were speaker boxes labeled "Technics" partially covered with a drop cloth in the backseat of the car,

and he became suspicious when he observed that the occupants appeared to be excited. The detectives further testified that Poliszczuk then failed to stop at a second stop sign at Orchard and Wrightwood. Poliszczuk denied violating any traffic regulations.

The detectives followed Poliszczuk until he turned onto Halsted Street where they stopped the car. Poliszczuk and Magnus got out of the vehicle and were immediately separated and questioned by the detectives about their failure to stop at the stop signs and also about the speakers in the backseat. Poliszczuk and Magnus both stated that the speakers did not belong to them but that they were moving them out of an apartment they were painting. The detectives then ordered Poliszczuk to open the trunk of his car where the officers observed more stereo components. The detectives testified that at this time the defendants offered to take the officers back to the apartment where they were working, located at 630 West Arlington. Poliszczuk disputed this; he maintained that the officers insisted that they return to the apartment.

Upon returning to the apartment building, Poliszczuk took Detective McGarry to apartment number 9, where McGarry observed that the doorjamb was splintered and appeared to be forced open; he also noticed that there were no personal effects in the apartment and that it was in the process of being redone. Poliszczuk and Magnus were both arrested at this time and taken to the police station.

The detectives related that at the police station they questioned Magnus and Poliszczuk and that both defendants made statements concerning the burglary. According to Detective Hennelly, Magnus admitted that he and Carrion burglarized apartment number 3 at the West Arlington address and carried the stolen property to the back porch of apartment number 9, where Poliszczuk agreed to help them take it down to his car and transport it to another location. Magnus further stated that the reason that the door to apartment number 9 was kicked in was to give the impression that apartment number 3 had been burglarized as well. Detective McGarry testified that Poliszczuk admitted that he was initially against participating in the burglary but agreed later to help carry the property to his car and transfer it to another place. Poliszczuk and Magnus both denied making any statements to the detectives.

The defendants' counsel filed motions asking the court to quash the arrest and suppress the evidence. At a pretrial hearing considering these motions, the trial court found that at the time of the stop, the detectives had no knowledge of the commission of any crime, but that the interdiction was nevertheless proper because of the traffic vi-

olations. Focusing on the plain-view doctrine, the court held that the officers had the right to question the defendants about the speakers and that the evasive answers they gave raised a reasonable suspicion in the minds of the detectives that a crime might recently have been committed; hence it was reasonable for the officers to return to 630 West Arlington to inspect the scene. Therefore, the motion to suppress the evidence was denied with respect to the speakers found in the backseat of the automobile. However, the trial court sustained the defendants' motion to suppress the evidence discovered in the trunk of the car.

As previously noted, Carrion's case was severed from that of Poliszczuk and Magnus; the latter two, however, were represented as codefendants by the same attorney. Their defense consisted of attempting to prove that neither of them had the requisite intent to commit the offense, as exemplified by Magnus' testimony that he entered apartment number 3 with John Smith, a building contractor who hired them to work on apartment number 9, only after Smith told him that the tenant owed back rent and that Smith needed assistance in removing some property. According to Magnus, Smith used his keys to enter the apartment, after which Magnus and Carrion carried the property to apartment number 9 where Magnus asked Poliszczuk to help him and Carrion transfer the property to Poliszczuk's car. Poliszczuk testified that he agreed to help Magnus and Carrion move the goods to another location. Both Magnus and Poliszczuk stoutly maintained that they did not know that the property they were conveying was stolen and that while doing so they were stopped by the two burglary detectives.

Both defendants concurred in their testimony that Poliszczuk never entered apartment number 3. Defense counsel, however, stated in his opening and closing remarks to the jury that both defendants entered apartment number 3. Poliszczuk argues that this failure to distinguish his actions from Magnus' constitutes a denial of effective assistance of counsel due to a conflict of interest. The State maintains, however, that even if a conflict of interest did exist, Poliszczuk waived any claims of prejudice in his being represented as a codefendant with Magnus by the same attorney by proceeding to trial after being fully admonished of the potential problems inherent in such a situation.

■ The right to effective assistance of counsel assured by the sixth amendment is indeed subject to waiver. (*Glasser v. United States* (1942), 315 U.S. 60, 71, 86 L. Ed. 680, 699-700, 62 S. Ct. 457, 465; *People v. Washington* (1984), 101 Ill. 2d 104, 114, 461 N.E.2d

393.) A court will, however, indulge every reasonable presumption against waiver of a constitutional right. (*Brewer v. Williams* (1977), 430 U.S. 387, 404, 51 L. Ed. 2d 424, 439, 97 S. Ct. 1232, 1242; *People v. Washington* (1984), 101 Ill. 2d 104, 114, 461 N.E.2d 393; *People v. Fife* (1979), 76 Ill. 2d 418, 423, 392 N.E.2d 1345.) In order to ascertain whether there has been an intelligent waiver of the right to the assistance of counsel, the court should look to the circumstances surrounding the claimed waiver and consider the background, experience, and conduct of the accused. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019; *People v. Washington* (1984), 101 Ill. 2d 104, 114, 461 N.E.2d 393.) Moreover, whether there is a proper waiver should be determined by the trial court, and it is fitting and appropriate for that determination to be on the record. *Glasser v. United States* (1942), 315 U.S. 60, 71, 86 L. Ed. 680, 699, 62 S. Ct. 457, 465.

■ The record in this instance clearly illustrates that Poliszczuk waived any claims of prejudice as to joint representation. We recognize that "it is difficult, if not impossible, to satisfactorily advise a defendant of the subtle effect which a conflict of interests may have upon *** counsel's representation." (*People v. Meyers* (1970), 46 Ill. 2d 149, 152, 263 N.E.2d 81.) Nevertheless, the trial court anticipated the potential for such a conflict and clearly admonished Poliszczuk of the problems that could arise. The clarity of the warnings is manifested by the judge's colloquy with the defendants and their attorney:

"THE COURT: Mr. Magnus, Mr. Poliszczuk, Mr. Carrion, before turning to the business of trial which we are about to in this case, I take note of the fact that we have three men charged with a serious offense represented by one lawyer. I am not suggesting that there is a conflict, but I am asking you, Mr. Murray, have you discussed the business of conflict with each of your clients?

MR. MURRAY: Yes, I have.

THE COURT: Now, gentlemen, do you understand that you have a legal right to be represented by a lawyer who represents only you? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have a legal right to be represented by a lawyer whose interests and loyalty would be to you and you alone?

THE DEFENDANT: Yes, sir.

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand in this particular case out-

side of what I learned on the hearing on the motion I really do not know anything about the case? I really do not know anything about your side of the story.

During the course of the trial, it is the lawyer that decides what defenses will be offered. It is the lawyer who decides which witnesses to call. The lawyer decides to ask questions and which questions are to be asked of which witnesses. He decides which arguments are to be made to the judge and to the jury, if we have a jury.

He advises each of the clients that he has on what plea to enter and whether to seek one particular type of a trial or another, and he may also advise as to whether or not a defendant, a person accused such as yourself, should testify.

It could happen. I am not saying it would happen in this case, but it could happen that a decision made by a lawyer or the advice he gives to the client may be in the best interest of one client and not in the best interest of another. It could be that when a lawyer does his duty to one client he may not be able to do his best for another.

If it happens, and again I do not know if the circumstances in this case indicate this, if there is any inconsistent evidence or theories of defense, it could affect the outcome of the trial in a way that could possibly benefit one and hurt another of the defendants.

I do not say as I said before that this will happen in this case, but I want you to be aware of the chances you take when more than one of you shares the same lawyer. Now have you discussed this with Mr. Murray. Mr. Murray, have you discussed all this with them?

MR. MURRAY: That is correct.

THE COURT: Do you still wish to go ahead with one lawyer?

THE DEFENDANT: Yes, we do.

THE DEFENDANT: Yes, I do."

As illustrated, the trial judge explained fully and carefully, not only to Poliszczuk, but to all of the defendants, the right of each to be represented by an attorney whose loyalty would be undivided. The judge also detailed to Poliszczuk how the myriad decisions which defense counsel might have to make in the course of representing codefendants could conceivably be in the best interest of one client while not in the best interest of the other. The record also demonstrates that the attorney who represented the defendants in the trial court warned

them about the possibility of a conflict developing during the course of a trial. As already noted, Carrion chose to have his trial severed from that of Poliszczuk and Magnus.

However, despite the clear and sufficient warnings of the trial judge, Poliszczuk decided to proceed to trial with one attorney to represent him and his codefendant, Magnus. In our opinion, this tactical decision constitutes an intelligent waiver when we consider Poliszczuk's background, experience, and conduct. He is a high school graduate and has been employed regularly since graduation, currently working as a press operator. Furthermore, we have no reason to believe that Poliszczuk's conduct during the judge's admonitions was anything but attentive and respectful. Hence, it is reasonable to conclude that Poliszczuk fully understood the legal implications of the court's admonishments and that he chose to ignore them.

Moreover, a finding that Poliszczuk did not waive his right to effective assistance of counsel could have a deleterious effect on our system of justice. Such a holding could easily encourage future codefendants in similar circumstances to ignore even the strongest and clearest warnings of the trial judge and proceed to trial hoping for an acquittal, and, if convicted, argue on appeal that their right to effective assistance of counsel was nevertheless denied, thereby creating the possibility of obtaining a new trial. The right would then be converted into a tool whereby codefendants could obtain two trials of the same issue. Our courts should avoid even the possibility of such unsound results.

Therefore, we hold that Poliszczuk waived any claim that he was deprived of the effective assistance of counsel. In light of this finding, we deem it unnecessary to address the question of whether an actual conflict of interest between Poliszczuk and Magnus manifested itself at their trial.

■ The second issue Poliszczuk relies upon in his appeal is that he deserves a new trial because the detectives' halting of his automobile for a minor traffic violation was a pretextual arrest and a subterfuge to search based on mere suspicion and that all evidence obtained as a result thereof should have been suppressed as the fruit of an illegal stop. The trial court entertained this argument at a pretrial suppression hearing at which the detectives testified that they stopped Poliszczuk's car after observing that he failed to stop at two different stop signs. Poliszczuk told the court that he did not violate any traffic regulations and urged it to consider the fact that neither officer issued him any traffic citation. The officers, however, were special detectives on burglary detail who did not carry citation books but who

were nevertheless authorized to stop traffic offenders if necessary.

After a full and complete hearing, the trial court ruled that there was sufficient cause to stop the defendant. In reaching this conclusion, the court heard the conflicting evidence, weighed the credibility of the witnesses, and chose to believe the detectives. It goes without saying that the trial judge is permitted to resolve conflicts in the evidence on the basis of the credibility of the witnesses. (*People v. Thomas* (1978), 75 Ill. App. 491, 493, 394 N.E.2d 624.) The findings of fact by the trial judge are not to be disturbed unless they are against the manifest weight of the evidence. (*People v. Medina* (1978), 71 Ill. 2d 254, 258, 375 N.E.2d 78.) We cannot find in the instant case that the judge's findings were manifestly erroneous. As the trier and finder of fact, the judge properly balanced the testimony and reached a reasonable and proper conclusion. Therefore, we uphold the trial court and find that the initial stop of Poliszczuk's car was proper based on the determination that he ran two stop signs.

■■ ■ The third argument Poliszczuk raises on appeal is that he was not proved guilty beyond a reasonable doubt on the basis of accountability. In order to hold a defendant accountable for the conduct of another, the State must prove beyond a reasonable doubt that: (1) defendant solicited, aided, abetted, agreed, or attempted to aid another person in the planning or commission of the offense; (2) the participation must have taken place either before or during the commission of the offense; and (3) the participation must have been with the specific intent to promote or facilitate the commission of the offense. (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c); *People v. Schlig* (1983), 120 Ill. App. 3d 561, 570, 458 N.E.2d 544.) In addition, although mere presence or negative acquiescence in another's actions is ordinarily insufficient to establish legal accountability for the acts of another, one may nonetheless be held to aid and abet without actively participating in the overt act. (*People v. Pleshko* (1983), 120 Ill. App. 3d 864, 875-76, 458 N.E.2d 975.) However, there must be proof of the required intent to aid, abet, or attempt to aid another in the perpetration of the crime. *People v. Evans* (1981), 87 Ill. 2d 77, 83, 429 N.E.2d 520.

■ We hold that Poliszczuk was proved guilty beyond a reasonable doubt of residential burglary on the basis of accountability. In so ruling, we defer to the judgment and wisdom of the jury. It is the function of the jury to determine the credibility of the witnesses, weigh the evidence, draw reasonable inferences therefrom, and resolve any conflicts in the testimony. (*People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671.) Whether the requisite intent existed is a question for the trier of fact. (*People v. Blair* (1972), 1 Ill. App. 3d

6, 8, 272 N.E.2d 404, *aff'd* (1972), 52 Ill. 2d 371, 288 N.E.2d 443.) The conclusions of the fact finder will not be overturned on appeal unless the evidence is palpably contrary to the verdict or so unreasonable, improper, or unsatisfactory as to create a reasonable doubt of guilt. *People v. Zuniga* (1981), 99 Ill. App. 3d 396, 400, 425 N.E.2d 1094.

The jury's conclusions in this instance were not unreasonable or improper. Poliszczuk's defense consisted of denying the requisite intent to commit burglary. His testimony, however, was directly contradicted by the officer's testimony that Poliszczuk confessed to agreeing to go along with the burglary after his initial reluctance. Furthermore, when Poliszczuk was stopped by the detectives he told them he was going to the corner of Surf and Broadway, which is a direction opposite to that in which he was traveling. The jury properly balanced all of this evidence with Poliszczuk's testimony and reasonably concluded that he knew that he was involved in a burglary and consequently possessed the requisite mental state. We uphold the jury's finding in this respect.

■■ The final issue the appellant raises on appeal is that it is reversible error when suppressed evidence, in this case a photograph of all the property recovered by the police, was admitted into evidence without objection by counsel. The State maintains that while it was error to admit such evidence, it was clearly harmless error and not grounds for reversal.

As mentioned earlier, the trial court sustained Poliszczuk's pretrial motion to suppress the items seized by the police officers from his automobile trunk. Specifically, the judge determined that the only evidence lawfully seized were the stereo speakers from the backseat of the car. Nevertheless, during the trial the prosecutor asked Detective McGarry and the tenant of apartment number 3, 630 West Arlington to identify a photograph marked as People's exhibit Number 6. Both witnesses responded that the photograph depicted a bicycle, two speakers, a radio, and a television that were owned by the tenant and reclaimed by the police after arresting the defendants. Of the several items portrayed in the exhibit, only the speakers were not previously suppressed. Defense counsel did not object to the witnesses' identification of the photograph, and both sides admit that no objection was raised when the State made a motion to admit the photograph into evidence, though the record is not clear when the prosecution made this motion. In light of the fact that no objection was made, the trial court admitted the photograph into evidence.

Generally, an objection to the introduction of evidence must be

made at the time of its admission or it will be treated as waived. (*People v. Baynes* (1981), 88 Ill. 2d 225, 231, 430 N.E.2d 1070.) According to Supreme Court Rule 615(a), however:

"Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (87 Ill. 2d R. 615(a).)

The supreme court in *People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403, explained that Rule 615(a):

"does not mandate that a reviewing court consider all errors involving substantial rights whether or not they had been raised in the trial court. Rather the rule is intended as a means of meliorating the harshness of the strict application of the waiver rule." (60 Ill. 2d 117, 120-21, 324 N.E.2d 403.)

The *Baynes* decision provides guidelines for the type of error which can be considered on review even if not raised in the trial court: "[i]f the admission of evidence constitutes plain error resulting in a miscarriage of justice upon a defendant or a tainting of the integrity and reputation of the judicial process, then it is considered although such error was not brought to the attention of the trial court." (*People v. Baynes* (1981), 88 Ill. 2d 225, 231, 430 N.E.2d 1070.) We find it unnecessary, however, to address the question of whether allowing the photograph into evidence sufficiently tainted the integrity and reputation of the judicial process so as to constitute plain error, because we believe that in any event the error is clearly harmless.

■ There are some errors affecting constitutional rights which in the setting of a particular case are so unimportant and insignificant that they may be deemed harmless and not requiring automatic reversal of the conviction. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) The standard for harmless error articulated by the *Chapman* decision is whether there is a reasonable possibility that the evidence complained of contributed to the conviction. One Illinois appellate court has held that error which does not contribute to the finding of guilt means that "the alleged erroneously admitted evidence did not prove an element of the crime not established by other properly admitted evidence." (*People v. Bundy* (1976), 79 Ill. App. 3d 127, 134, 398 N.E.2d 345.) Perhaps a clearer enunciation of the standard is that the error is harmless if the competent evidence presented was sufficient to prove the defendant's guilt beyond a reasonable doubt. *People v. Gomez* (1980), 80 Ill. App. 3d 708, 715, 399 N.E.2d 1368.

■ We believe that admitting the suppressed photograph into evidence was harmless error in this instance. The erroneously admitted evidence, it is safe to say, did not contribute to the finding of guilt. Ample competent evidence was presented upon which the jury could convict beyond a reasonable doubt. The jury considered the testimony of the detectives that Poliszczuk confessed and that he was traveling in a direction opposite to the location to which he claimed he was going when he was apprehended. It also observed the demeanor of the witnesses and determined who was credible. When these factors are balanced against the prejudicial effect of the photograph, it seems clear that admitting it into evidence had little or no effect on the deliberations of the jury.

For the reasons stated above, we affirm the decision of the trial court.

Affirmed.

BILANDIC and STAMOS, JJ., concur.