THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN JOSEPH KAVANAUGH, Defendant-Appellant.

Second District   No. 78-512

Opinion filed July 10, 1980.

Jeffrey H. Haas and Gerald A. Block, both of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

The principal issue presented by this appeal is apparently one of first impression in Illinois: whether the credibility of a criminal defendant can be impeached with evidence of involvement in a criminal proceeding which did not technically result in a conviction.

Defendant, John J. Kavanaugh, was charged with deviate sexual assault (Ill. Rev. Stat. 1977, ch. 38, par. 11—3) and indecent liberties with a child (Ill. Rev. Stat. 1977, ch. 38, par. 11—4(a)(2)). Following a jury trial in the Circuit Court of Du Page County, he was found guilty of both charges. Judgment was entered on the deviate sexual assault charge, and the defendant was sentenced to four to six years in the custody of the Department of Corrections. The defendant's post-trial motion was denied, and this appeal followed.

Late in the evening of May 13, 1977, the complaining witness, age 14, left a friend's house on a bicycle to go home. As he was riding he was passed by a person driving a purple Gremlin who slowed as he passed. Shortly thereafter the complaining witness was confronted by a man who pulled him off his bike and into the grass. When the complaining witness asked him what he was going to do, the man told him to keep quiet or he would be killed. The man pushed the witness away from the street, pulled

down the witness' pants, put the witness' penis in his mouth, and told the witness that he wanted the witness to do the same for him. The man stood up, pulled down his pants and told the witness to do it to him. The witness put his mouth on the man's penis and the man ejaculated in 10 to 15 seconds. During this period the complaining witness saw his attacker's face for a period of approximately 43 to 48 seconds.

After unsuccessfully seeking help, the complaining witness fled the scene. Police were subsequently called and the witness described his assailant as tall (6' to 6'2"), thin, unshaven, with jeans and a black shirt. Shortly thereafter the complaining witness produced a wallet he found on the ground after the attack. An officer then showed the complaining witness a photograph from the wallet and the witness said it looked similar to, but not exactly like, the assailant. Apparently the picture was of the defendant's father.

Upon his arrival at the police station, the complaining witness was shown six "mug shot" photographs, including a two-year-old photograph of the defendant. He picked out the defendant's photograph as his assailant. The police then requested that he take a second look and he again picked out the defendant. At defendant's motion to suppress hearing it was established that the six mug shots showed figures against scales showing height and that only the defendant and one other individual matched the height description given by the complaining witness. While the trial court found the photographs to be "somewhat suggestive," the defendant's motion to suppress was denied.

At trial, the defendant requested that he be seated in the spectator's section of the courtroom during the complaining witness' testimony. The trial court consented to this request on the condition that the defendant's brother—who apparently looked very similar to the defendant—leave the courtroom for this period of time. The defendant chose to have his brother remain in the courtroom and thus the defendant had to sit at counsel table. The complaining witness subsequently identified the defendant as his attacker. This was the first and only in-person identification of the defendant.

John Sohol, a friend of the defendant, testified for the defense. He stated that on the evening in question, he and the defendant were at a drivein movie, a party, and then at a restaurant. Sohol further testified that before he and the defendant left for the movie, the defendant's mother gave the defendant $3 to put in his wallet, but the defendant did not have his wallet with him. The defendant's mother also testified that she gave her son $3 and that he did not have his wallet with him.

The defendant took the stand in his own behalf. He testified to the same general effect as the two prior defense witnesses. He further

testified that after the movie and the party, he returned home to get his car—a silver Gremlin with a blue stripe. He then met Sohol at a restaurant and stayed until 11:55, arriving home at 12:30. In rebuttal, the State offered, for the purpose of impeachment, a certified copy of a record dated February 5, 1976, from Cobb County, Georgia, indicating that the defendant had pleaded guilty to one count of possession of burglary tools and four counts of burglary. This document also bore the underlined notation "First Offender." The defendant argued to the trial court, and now argues on appeal, that this document was improperly admitted as it was not an adjudication of guilt, but merely an admission to probation under the Georgia first offender act (Georgia Code of Criminal Procedure §§27-2727, 27-2728 (1978)). At the hearing on his post-trial motion, the defendant produced a discharge order, dated June 26, 1978, under the Georgia first offender act which stated in part that "the defendant shall not be considered to have a criminal conviction." The defendant's trial had ended on May 15, 1978.

On appeal, the defendant raises the impeachment issue and three other issues: whether the results of a photographic lineup should have been suppressed as suggestive, whether the in-court identification of the defendant should have been suppressed, and whether the defendant was proved guilty beyond a reasonable doubt.

### IMPEACHMENT EVIDENCE

It is well settled that while a witness may be impeached by attacking his character by proof of certain criminal *convictions*, proof of arrests, indictments, charges or actual commission of a crime are not admissible. (*People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835; see also E. Cleary and M. Graham, Handbook of Illinois Evidence §608.5 (3d ed. 1979).) In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, our supreme court adopted guidelines for the introduction of evidence of convictions. Specifically the court held that the provisions of the 1971 draft of Federal Rule of Evidence 609 should be followed in future cases. Section (c) of this draft rule provides as follows:

> "(c) Effect of Pardon, Annulment, or Certificate of Reha-
> bilitation. Evidence of a conviction is not admissible under this rule
> if (1) the conviction has been the subject of a pardon, annulment,
> certificate of rehabilitation, or other equivalent procedure, and (2)
> the procedure under which the same was granted or issued
> required a substantial showing of rehabilitation or was based on
> innocence."

(Quoted at 47 Ill. 2d 510, 516, 268 N.E.2d 695, 699.)
Thus, if the discharge order had been timely entered and brought to the

attention of the trial court, the Georgia proceedings clearly could not have been used for impeachment purposes. See *United States v. Trejo-Zambrano* (9th Cir. 1978), 582 F.2d 460; 3 Weinstein's Evidence §609[04] (1978.)

In the instant case, however, section (c) is not controlling as the defendant's order of discharge was not entered before trial. Instead of relying on this provision, the defendant argues that the initial disposition of his Georgia charges was not technically a "conviction" and thus could not be used for impeachment purposes. The State concedes that defendant was not formally convicted of the Georgia charges. The State argues that simply because the defendant's plea of guilty did not result in a true conviction it should not be deprived of the impeachment value of the prior proceedings. The State primarily relies on the case of *Favors v. State* (1975), 234 Ga. 80, 214 S.E. 645, in support of its contention that the impeachment evidence was properly admitted. Apparently it was also on the authority of that case that the trial court made its decision to admit the evidence in question. In our view, however, the *Favors* case is not controlling. In *Favors* the court considered the Georgia first offender act in the context of a prosecution witness and held that it was reversible error to prohibit the defendant from impeaching the witness who had been subject to the act. In that case a defendant's confrontation rights were in issue which is not the case here.[1]

■■ In *Montgomery*, our supreme court took judicial notice of the possible prejudice that can result from the introduction of evidence of a defendant's prior conviction and adopted strict guidelines in an attempt to regulate and minimize the prejudicial effects of this type of evidence. The State concedes that in this case the prior proceedings did not result in a formal conviction. We hold that in light of the *Montgomery* mandate, it is improper to introduce evidence for impeachment of a prior proceeding that did not result in a conviction. To hold otherwise would, in our view, amount to circumvention of the rule stated in cases like *Mason* that only convictions may be used for impeachment of a witness.

The State also argues that any error was harmless. We disagree. As noted in *Montgomery*, evidence of a prior conviction can be highly prejudicial. In the instant case the State sought to highlight this evidence by stating that the defendant "stands before you a convicted felon * * *," which could be considered "as to his ability to tell the truth." Also, the defendant has raised questions as to the propriety and quality of the identification testimony. As discussed below, we believe that these questions are more concerned with the weight and credibility of the

---

[1] There is also some authority for the proposition that the *Favors* decision would not be followed in Illinois. See *People v. Dimond* (1977), 54 Ill. App. 3d 146, 369 N.E.2d 383.

identification and not the admissibility of the questioned testimony. However, given this credibility issue, we cannot say that the improperly admitted impeachment evidence had no impact on the jury's verdict and thus we reject the State's harmless error judgment.

In sum, we conclude that on the basis of the improper use of the Georgia proceeding, the defendant's conviction must be reversed and this case remanded for a new trial with this evidence excluded. As the other contentions made by the defendant would remain in issue at a new trial, we will briefly address their merits.

### IDENTIFICATION

The defendant argues that the photographic display was tainted for two reasons: (1) the complaining witness had some three hours before being shown the picture of the defendant's father, and (2) only the defendant's photo showed a person matching the height description which had been given to the police.

■■ The practice of showing a crime victim a single photograph or the suspect standing alone has been widely condemned. (*People v. Blumenshine* (1969), 42 Ill. 2d 508, 512, 250 N.E.2d 152, 154; *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.) There are, however, instances where such a showup is either justifiable or otherwise falls short of a denial of due process (*Blumenshine*). In a case such as the instant one, where prompt identification is necessary for effective police work, a one-on-one showup is often justified. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.

Moreover, in this case the complaining witness stated that the person depicted in the photograph was not the offender although he was similar and could possibly be a relative. He later identified a picture of defendant from a group of pictures as his assailant. This ability to distinguish the offender from a relative indicates that the complaining witness' identification of the defendant was based on his observations at the time of the crime and not on any suggestive procedures employed by the police.

■■ The defendant also contends that the photographic lineup itself was suggestive due to height discrepancies in the six photographs. The complaining witness described his assailant as tall, approximately six feet to six feet, two inches. The defendant's photograph showed him to be 6'3". One other photograph was of a person 6' or 6'1" with the remaining individuals somewhat shorter. Thus there was one other individual in the show-up who fit the height description previously given. There is no requirement that all men placed in a lineup must be physically identical, and claims that there were significant differences between the age, size,

and appearance of a suspect and other lineup participants goes to the weight of the evidence and not necessarily to its admissibility. (*People v. Owens* (1977), 46 Ill. App. 3d 978, 991, 361 N.E.2d 644, 653-54.) In the instant case we hold that the size differences were not so suggestive as to deprive the defendant of due process.

With respect to the complaining witness' in-court identification of the defendant, the defendant's argument is again two-fold. First, he maintains that there was no independent basis for the in-court identification (that is, that it was tainted by the prior photographic identifications). However, given our conclusion that the pretrial identification procedures were proper, they cannot be said to have tainted the in-court identification. The defendant also argues that he should have been put in an in-person lineup. However, there is no requirement that a not-in-custody suspect be placed in a lineup. At the investigatory stage a photographic lineup—like the one employed here—is sufficient. *People v. Owens* (1977), 46 Ill. App. 3d 978, 990, 361 N.E.2d 644, 652-53.

■■■ The defendant also claims the trial court erred in requiring him to sit at counsel table where he was easily identified by the complaining witness. The record is clear that the trial court consented to the defendant sitting in the spectator section on the condition that the defendant's brother leave the courtroom for that period of time. Faced with this choice, the defendant decided to allow his brother to remain in the courtroom. A defendant does not have an absolute right to be removed from counsel table before an in-court identification. (*People v. Finch* (1970), 47 Ill. 2d 425, 266 N.E.2d 97.) We believe that the condition suggested by the trial court was fair in view of the apparent closeness in appearance between the defendant and his brother. The defendant made his choice and cannot now complain that he was denied due process by being forced to sit at counsel table.

### REASONABLE DOUBT

Finally, the defendant argues that he was not proved guilty beyond a reasonable doubt. We disagree. The victim viewed the defendant for some 43 to 48 seconds under a light provided by a street light and a patio light. He described the attacker's height, hair color and length, and clothing. The victim identified the defendant during the photo lineup and at trial. The defendant's wallet was found at the scene of the crime. The defendant presented an alibi defense and argued mistaken identity. In reviewing the sufficiency of the evidence, the decision of the jury will be affirmed unless the reviewing court can find reasonable and well-founded doubt as to the defendant's guilt. (*People v. Taglia* (1979), 76 Ill. App. 3d 199, 392 N.E.2d 725.) In our view, there was sufficient evidence of guilt

presented at trial to preclude a conclusion that a retrial amounts to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375.

For the foregoing reasons, the judgment of the Circuit Court of Du Page County is reversed and this case is remanded for a new trial.

Reversed and remanded.

SEIDENFELD, P. J., and WOODWARD, J., concur.