THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANIEL GRAYER *et al.*, Defendants-Appellants.

First District (1st Division)    No. 79-1880

Opinion filed April 26, 1982.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellants Daniel Grayer and Eric Harris.

George M. Zuganelis, of Chicago, for appellant Leonard Kemp.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Sharon Eiseman, and Mark R. Fuller, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial, defendants Daniel Grayer, Leonard Kemp and Eric Harris were found guilty of armed robbery and sentenced to six years imprisonment.

Defendants Grayer and Harris appeal, contending that they were denied a fair trial by the State's improper and highly prejudicial cross-examination of a defense witness. Defendant Kemp appeals, contending that (1) he was denied effective assistance of counsel and (2) he was not proven guilty beyond a reasonable doubt.

On February 22, 1979, Treena Moore, Cynthia Harris, Debra Harris and Debra's fiance, Eugene Cannon, lived in an apartment building at 225 East 50th Street in Chicago. At approximately 8 p.m. on February 22, 1979, Treena Moore, Cynthia Harris and Debra Harris left their apartment building to go to a Burger King located at 48th and State Streets. After purchasing food, the three girls walked south on Wabash Avenue past DuSable High School at 49th and Wabash. Six boys were sitting in front of the school. The girls then walked east on 49th Street toward Michigan Avenue when three boys approached them from the rear. The girls stopped to let the boys pass when one said, "No mama we don't want to get past we want what you got." One of the boys asked Debra for money. When Debra said she did not have any, one of the boys pulled out a gun and pointed it at her head. Cynthia was then searched by one of the boys, who took her keys. She was told she had to give him money to get her keys back. At the same time one of the boys searched Debra and took some money from her pocket. One of the boys then ran past and snatched the bag of food Debra was holding. As the three boys left, the boy with Cynthia's keys threw them to the ground and another boy turned and fired two shots at the girls. The girls then ran to a police car at 49th and Indiana. The officer in that car called another vehicle. Officer Willie Smith and his partner arrived, spoke to the girls about the incident and then drove them to their home at 225 East 50th Street. Officer Smith testified that he spoke with the girls for approximately 10 minutes after the incident and none of the girls gave a description of the offenders. However, the girls told him they could identify their assailants.

At trial, Treena Moore identified defendant Harris as the one who

searched Cynthia's pockets and took her keys. Defendant Grayer asked Treena if she had any money.

Cynthia Harris identified defendant Grayer as the one who first said that they wanted what the girls had. She also identified defendant Harris as the boy who searched her and took her keys. Cynthia identified a photograph as accurately depicting the lineup she viewed on February 22, 1979. That evening she identified No. 4 as searching her, No. 5 as the boy with the gun who searched Debra and No. 6 as the other boy who robbed them.

At trial, Debra identified Kemp as the one who said they wanted what the girls had. Debra testified that defendant Grayer pulled out a gun and defendant Harris searched Cynthia. She also stated that defendant Kemp was the one who searched her and ran past her and snatched her bag of food.

After returning home, Debra Harris and Eugene Cannon went back to Burger King to get Cannon's lunch. Cannon carried a pipe that he found in the alley. Cannon did not have a gun. On the way, Debra saw the three defendants and another boy. Debra testified that defendant Harris was on a snowbank, making rhymes about how he had robbed her. After telling Cannon that the three others were the robbers, Debra and Eugene went home, the three defendants ran away and the fourth boy stayed there alone.

That evening Debra viewed a lineup and identified Nos. 4, 5 and 6 as the boys who had robbed her. She identified No. 4 as the one who searched Cynthia, No. 5 as the one who searched Debra and snatched her bag and No. 6 as the one who held the gun and took money from Debra's pocket. Debra Harris further testified that one week before trial, when she was outside the courtroom with Eugene Cannon and Cynthia Harris, she saw the three defendants and that defendant Kemp told her that "if we didn't press charges he would give us the money because he didn't do it."

Ernest Holmes testified that he was defendant Grayer's cousin and had known defendants Kemp and Harris for years. Holmes testified that on the night of February 22, 1979, he had seen defendant Kemp and defendant Grayer watching television at Mr. Graham's apartment at approximately 8:45 p.m. Mr. Graham lived at 4844 South State, which is one-half block west of DuSable High School and one-half block from 49th and Wabash. They left Mr. Graham's apartment to buy beer. Holmes, Kemp and Grayer walked to 47th and State with four other boys. After they got the beer, the three got on a bus to go two blocks north because the bus was there and it was cold outside. They met defendant Harris on the bus. When they got off the bus at 49th and State, they were

approached by a man and a woman. The man had a gun and shot twice at them. The man asked the woman, "Is that them, is that them?" and the woman replied, "No." Holmes began to run when he was shot at, but he fell. The man came over to him and hit him with the gun.

A short time later Holmes found a plain-clothes policeman and they rode in his car looking for the man with the gun. When they found him, he was with uniformed police officers. They all went to the police station. Holmes was placed in a lineup. Holmes was not identified in the lineup or charged with armed robbery. However, the three defendants were identified in the lineup. The clothes they wore in the lineup were the same clothes they wore that evening. On cross-examination, the State's Attorney inquired into the details of a prior offense committed by Holmes. This testimony is subsequently set forth.

Andrew Graham testified that defendants Grayer and Kemp came to his apartment about 8 p.m. on February 22, 1979. He was training them to build cabinets and connect speakers. Graham did not remember whether defendant Harris was present. About 8:30 p.m. defendants Grayer and Kemp went to the liquor store to buy beer. They were gone about 15 or 20 minutes when they came back with the beer. Defendants Grayer and Kemp left Graham's apartment at 9 p.m.

Eric Harris testified that on February 22, 1979, he worked overtime at Automatic Electric, where he had been employed for approximately two years. He got off work at 6 p.m. that day. Before going home, he stopped at the home of Andrea Watson, who lived near 69th and Lowe. He left Watson's home between 9:30 and 9:45 p.m. On his way home, he took the El and the bus. He got on the El at 69th and Wentworth and got off at 47th Street. He got on the bus there and saw defendant Grayer, defendant Kemp and Holmes on the bus. Defendant Harris identified himself in a photograph of the lineup he participated in on the evening of the incident as No. 4, defendant Kemp as No. 5 and defendant Grayer as No. 6. He stated that the clothes worn by defendants in the lineup were the clothes they wore that evening.

Defendant Grayer testified that he lives at 4844 South State. He stated that Mr. Graham was teaching him a trade in electronics. Grayer testified that defendant Kemp came to Grayer's house at 7:30 p.m. on February 22, 1979. From there they went down to Graham's apartment. They arrived there at 7:40 p.m. and left at 8:45 p.m. to go to the liquor store. They walked to the liquor store located at 47th and State and took the bus for the return trip of two blocks. They met defendant Harris on the street at 9 or 9:10 p.m. He was drunk and staggering. They did not return from the store.

Defendant Kemp testified that he lives at 4947 South Federal, three

buildings from 4844 South State. He stated that he and defendant Grayer got to Graham's at about 8 p.m. and left at 8:50 p.m. to buy beer. Defendant Kemp did not return with the beer.

All three defendants were arrested on the street outside 4844 South State at 9:30 p.m. on February 22, 1979. The time of the armed robbery was 8:40 p.m.

The jury found all three defendants guilty of the armed robberies of Debra Harris and Cynthia Harris.

Defendants Grayer and Harris contend that the State's cross-examination of defense witness Ernest Holmes which elicited the details of a prior conviction requires a new trial. We disagree.

■■ Holmes was cross-examined at some length and in some detail concerning a gun offense in which Holmes had accidentally fired a gun from a back porch injuring a conductor on a passing El train. Defense counsel's only objection during that portion of the cross-examination of Holmes cited by defendants was one which challenged the relevancy of the State's inquiry into the age of the victim shot on the El train. At no time did defense counsel make an objection on the grounds that the State's line of questioning was improper. The failure to object to the admission of evidence operates as a waiver of the right to consider the question on appeal. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) Furthermore, an objection to evidence based upon a specific ground is a waiver of objection on all grounds not specified. (*People v. Washington* (1962), 23 Ill. 2d 546, 179 N.E.2d 635.) Thus, defendants Grayer and Harris waived their objections to the State's cross-examination of Holmes and will not be permitted to raise these objections for the first time on appeal.

Assuming that this issue was not waived, we find that any error committed in allowing the State to cross-examine Holmes as to the details of his prior conviction was harmless beyond a reasonable doubt.

■■ *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, sets forth the fundamental rule of impeachment of a witness by a prior conviction. It requires that the conviction be for an offense punishable by imprisonment in excess of one year, or, alternatively, that the offense involve dishonesty or false statement regardless of the punishment. The record here does not indicate the offense for which Holmes was previously convicted. However, the record does show that the facts of the offense for which Holmes was convicted involved his firing a gun, resulting in the injury of an El conductor. This offense clearly does not involve dishonesty or false statement. In order for Holmes' conviction to be used to impeach him, the conviction would have to be for an offense punishable by imprisonment in excess of one year. Neither defendants nor the State argue that Holmes' prior conviction was not for an offense

punishable by imprisonment in excess of one year. Thus we will assume that the offense for which Holmes was convicted was punishable by imprisonment in excess of one year and was, under *People v. Montgomery*, a conviction which could be used to impeach Holmes.

Further, the latitude to be afforded in the cross-examination of witnesses rests largely in the trial court's discretion and, absent a showing of abuse of that discretion, its determination will not be disturbed on appeal. (*People v. Brown* (1980), 91 Ill. App. 3d 582, 414 N.E.2d 1165.) Defendants here do not urge that the trial court erred in allowing the State to elicit evidence that Holmes had a prior conviction; rather, defendants argue that the trial court erred in allowing the State to elicit the details of the conviction. In *People v. Upshire* (1978), 62 Ill. App. 3d 248, 379 N.E.2d 38, the court found no abuse of discretion when the trial court permitted the prosecutor to elicit the date, crime and sentence from the witness during cross-examination. In *People v. Humes* (1979), 78 Ill. App. 3d 255, 397 N.E.2d 130, we held that the trial court did not abuse its discretion in refusing to allow the defense to cross-examine the victim regarding where he had been convicted, the time and place of the criminal acts, the particular facts of the crimes, whether he had pleaded guilty or innocent to the charges and the sentences imposed. Furthermore, in *People v. Butler* (1978), 63 Ill. App. 3d 132, 379 N.E.2d 703, the court found that the questioning of defendant concerning details of his prior conviction was improper because not relevant either (1) to impeach defendant's credibility or (2) to prove a material issue in the case. However, because there was other sufficient competent evidence which established defendant's guilt beyond any reasonable doubt and the error did not appear to contribute to the jury's verdict, the error was harmless and reversal was not required.

■■ In the case before us, we find that knowledge of the details elicited would not serve to aid the jury in judging Holmes' credibility; the inquiry was improper; but, in view of the other evidence which established defendants' guilt beyond a reasonable doubt, we find that the error was harmless.

Defendant Kemp contends that he was denied effective assistance of counsel because the public defender representing all three defendants would not cross-examine Debra Harris or argue regarding which of the defendants held the gun during the robbery without jeopardizing defendant Grayer. We disagree.

During direct examination Debra Harris identified defendant Kemp as the boy who made a comment to her and her companions as the girls stopped to let the three boys walk past them. She referred to Kemp as the defendant who was wearing a gray suit at trial. Debra Harris identified defendant Grayer as the boy who pulled the gun during the robbery and

referred to him as the defendant who was wearing a red tie at trial. Debra Harris identified defendant Harris as the boy who searched Cynthia Harris and referred to him as the defendant who was wearing a grayish sports jacket and a goldish white shirt at trial. She then testified that the one in the gray suit ran past and snatched her bag. She was then asked:

"Q And what happened then after snatching your bag, what did Mr. Kemp do at that point?

A He snatched the bag and then he held the gun and—

Q Mr. Grayer had the gun now?

A Yes, the one in the red tie, red tie had the gun and then he snatched the bag and the one on the end right here next to Mr. Grayer he took—he was searching my sister and he snatched her keys out of her pocket and she asked him could she have her keys back and he told her that she had to give him some money, she told him she didn't have any money, then he said that they can't have the keys unless they gave him some money."

Debra Harris then identified a photograph of the lineup from which she identified the three defendants. She said that she had identified the person in position No. 4 as the boy who searched Cynthia Harris; the person in position No. 5 as the boy who searched her and took her bag; and the person in position No. 6 as the boy who took her money and held the gun.

Defendant Kemp contends that when the prosecutor corrected Debra's testimony as to which of the defendants held the gun during the robbery, the defense attorney was put in a position whereby he could no longer effectively cross-examine Debra or argue to the jury regarding which defendant held the gun without jeopardizing defendant Grayer and thereby resulting in a denial of effective assistance of counsel as to defendant Kemp.

We note that the public defender did not inform the court of this alleged conflict between defendants at trial or in defendants' post-trial motion. In *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227, the court held that where the issue of joint representation of parties with conflicting interests was not raised at trial nor in the motion for a new trial, and where it did not appear that the failure of the trial court to raise the issue *sua sponte* was an error affecting the defendant's substantial rights, the issue was waived and could not be raised for the first time on appeal. Furthermore, defendant Kemp does not contend here, nor do we find, that it is "plainly apparent from the record that an error affecting substantial rights was committed." (*People v. Precup* (1978), 73 Ill. 2d 7, 17.) We hold that this issue has been waived.

Assuming that the issue had not been waived, we find that defendant Kemp was not denied effective assistance of counsel.

It is not a *per se* violation of the right to effective assistance of counsel to permit one attorney to represent multiple defendants. (*People v. Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169; *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 41, 100 S. Ct. 64.) Furthermore, a defendant must show an actual conflict of interest in order to prevail in a constitutional claim of ineffective assistance of counsel due to joint representation of co-defendants by a single attorney. *People v. Berland.*

■■ We find no actual conflict in the record. Debra Harris' testimony was clear in describing which defendant held the gun during the robbery. It appears from the record that at some point the prosecutor was confused as to which defendant held the gun, but that Debra consistently identified defendant Grayer as the boy who held the gun. In addition, both defendant Kemp and defendant Grayer asserted the same defense at trial and no objection was made to their joint representation. Both Kemp and Grayer testified to being in each others' presence at Mr. Graham's place. Under these circumstances, we find that defendant Kemp was not denied effective assistance of counsel.

Defendant Kemp's second contention is that he was not proved guilty beyond a reasonable doubt because two of the eyewitnesses, Cynthia Harris and Treena Moore, did not identify Kemp as a participant in the armed robbery and the third eyewitness' testimony was confused and conflicting.

The weight and credibility to be given a witness' testimony is a determination for the jury as the trier of fact, and unless that determination is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt as to guilt, a conviction will not be reversed. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063.) Furthermore, the testimony of a single identifying witness is sufficient to sustain a conviction provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. *People v. Yarbrough* (1977), 67 Ill. 2d 222, 226, 367 N.E.2d 666, quoting *People v. Stringer* (1972), 52 Ill. 2d 564, 569; *People v. Hughes* (1977), 55 Ill. App. 3d 359, 371 N.E.2d 41.

■■ We find that the record does not support defendant Kemp's contention that he was not proved guilty beyond a reasonable doubt. Although Treena Moore did not identify defendant Kemp as a participant in the armed robbery, Cynthia Harris testified that she viewed a lineup on the evening of the incident and identified all three defendants as participants in the armed robbery. Furthermore, at trial Debra Harris identified defendant Kemp as the one who told the girls that they wanted what the girls had and as the boy who searched her and snatched her bag of food.

On the evening of the incident, Debra Harris viewed a lineup and identified Nos. 4, 5 and 6 as the persons who robbed her. Defendant Kemp admitted that he was No. 5 in the lineup. Debra Harris had a good opportunity to observe defendant Kemp because he was the one who searched her. We find that Debra Harris' identification of defendant Kemp was positive.

It is true that Debra Harris testified that it was defendant Kemp who first approached the girls and told them that the three wanted what the girls had and that Cynthia Harris testified that it was defendant Grayer who said this. However, conflicts in testimony are not uncommon and resolutions of questions of fact are for the jury. (*People v. Yarbrough* (1977), 67 Ill. 2d 222.) We cannot say that this conflict in testimony raised a reasonable doubt of defendant Kemp's guilt.

We also do not find Debra Harris' identification testimony to be confusing. During Debra's testimony, she identified which participant had done what by referring to the clothes defendants wore at trial and where they were seated. Defendant Kemp wore a gray suit and sat next to defense counsel. Defendant Grayer had a red tie and sat next to defendant Kemp. Defendant Harris wore a gray jacket and gold shirt and sat next to defendant Grayer. Defendant Kemp claims that the testimony of this witness quoted above created a reasonable doubt of his guilt. We disagree. She was describing what each defendant had done during the incident. She did not state that defendant Kemp had the gun, but rather stated that the defendant wearing the red tie at trial, defendant Grayer, had the gun. A close reading of the record shows that in her answer, "[h]e snatched the bag and then he held the gun," her use of "he" twice was not a reference to only one defendant, but to two. In any event, this testimony does not create a reasonable doubt of defendant Kemp's guilt. In addition, we do not find that the fact that the girls did not give a description of their assailants to police soon after the incident creates a reasonable doubt of defendant Kemp's guilt. Defendant Kemp was found guilty beyond a reasonable doubt.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG and McGLOON, JJ., concur.