THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH PERRUQUET, Defendant-Appellant.

Fifth District   No. 81—67

Opinion filed September 14, 1983.

Randy E. Blue and Richard J. Bennett, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Stephen E. Norris, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Joseph Perruquet, who was charged by information with rape and deviate sexual assault, was tried by a jury and convicted of both offenses. He was sentenced to 20 years' imprisonment on each offense, and these terms were to run concurrently.

On appeal defendant argues that: (1) he was denied a fair trial because the State's cross-examination of a defendant's character witness improperly elicited evidence of other crimes and constituted improper impeachment; (2) the trial court erred by granting the State's motion *in limine* which sought to preclude an expert witness on eyewitness testimony; and (3) his concurrent 20-year sentences were an abuse of discretion.

Prior to trial, the prosecution filed a motion *in limine* to preclude the testimony of Dr. Elizabeth F. Loftus, a psychologist who would testify for the defense as an expert witness on the subject of eyewitness testimony. At the hearing on the State's motion, defense counsel argued that Dr. Loftus' testimony would not concern matters within the common knowledge and experience of the average juror. According to defense counsel, Dr. Loftus would testify regarding the effect of stress upon a crime victim's recall of events when a weapon had been used in the commission of an offense and the phenomenon called "unconscious transference" which may occur when a victim of a crime sees a person prior to a lineup and mistakenly identifies that person as the assailant. He also represented that Dr. Loftus would give testimony similar to that which she gave in a 1978 California criminal trial, which was outlined in the appendix of Dr. Loftus' book entitled *Eyewitness Testimony*. At this trial, Dr. Loftus discussed various psychological findings regarding perception and memory as applied in the context of criminal incidents. After the trial court had reviewed Dr. Loftus' book, as requested by defense counsel, the trial court refused to allow Dr. Loftus to testify and granted the State's motion *in limine*.

At trial, the complainant testified that as she was leaving from a doctor's appointment at the Carbondale Clinic on June 30, 1980, at approximately 11 a.m., she was accosted by defendant who was

armed with a knife. According to complainant, defendant held the knife at her back and taped her hands together. Complainant stated that defendant took her car keys and drove to a rural wooded area. Complainant related that, while defendant was driving, she noticed that one of defendant's fingers was black at the top and had stitches in it. Complainant said that upon their arrival at the wooded area, she was blindfolded with a thin, light cloth through which she was able to see. She stated that after the two walked a short distance into the woods, she was sexually attacked. She said she was forced to perform fellatio and to have sexual intercourse with her attacker. Complainant said that defendant then tied her clothes into a knot to impede her departure and then ran away. She said that after she dressed, she walked to a road and flagged down a car whose driver agreed to take her to the DeSoto crime lab. On the way, they encountered two State policemen and complainant related to them what had occurred.

Complainant testified that she informed police that her assailant was 20 to 30 years of age, of slender build, weighing about 150 pounds, was 5 feet 10 inches tall, had wavy blondish-brown colored hair, and wore black horn-rimmed glasses.

Complainant testified that on September 26, 1980, she viewed a lineup at the Williamson County courthouse consisting of five men. She said that she identified the defendant from among the men in the lineup. Complainant further testified that she had no doubt that defendant was the man who attacked her.

Bill Stanhouse, a special agent with the Illinois Department of Criminal Investigation, testified that complainant had taken him to the scene of the alleged rape and he there found a wad of tape, a cotton cloth tied in a knot and a pair of women's underpants, all of which he identified at trial. He also corroborated complainant's testimony that she had identified defendant from a lineup.

Andrew Wist, a forensic scientist with the Department of Law Enforcement, testified that seminal material was found in complainant's vagina and the halter top which she wore on the day she was attacked. Mr. Wist testified that from his analysis of defendant's blood and biological secretions, he concluded that the seminal stains found on complainant's clothing could have come from defendant.

It was stipulated at trial that defendant on June 20, 1980, while using an electric hedge trimmer, had lacerated and fractured the distal phalanx of his left fifth finger.

Karen Vreeland, defendant's ex-wife, testified that defendant had a good reputation for being chaste and law-abiding. On cross-examination the prosecutor repeatedly asked Ms. Vreeland if defendant had

ever been arrested and, if so, what he was arrested for and how many times he was arrested. Defense counsel objected once "about arrests if not convicted" but was overruled by the trial court.

George Flanagan, a minister who had known defendant for two to three years, testified that defendant had a good reputation for chastity.

Defendant testified in his own behalf. He admitted that he had been convicted of burglary and had been arrested on a number of occasions for other alleged offenses. According to defendant, he could not have attacked complainant because on the day of the attack he was at his mother's house in Royalton, Illinois. Defendant testified that he arrived at his mother's house at about 9 a.m. on June 30, 1980, with his wife and children and did not leave there until about 1 p.m.

Defendant's account of his whereabouts on June 30, 1980, was corroborated by his sister, Estella Short; his mother, Hazel Perruquet; and his wife.

Frank Cooper, a crime scene technician for the Illinois Department of Law Enforcement, testified that a latent print removed from complainant's vehicle did not match defendant's fingerprints.

It was stipulated that Karen Having, who was at the Carbondale Clinic on June 30, 1980, at approximately 12:30 p.m., had observed a white male in the vicinity but, after viewing a lineup, could not identify defendant as the man she saw.

In rebuttal, the State presented the testimony of James Drake, who was incarcerated with defendant in the Jackson County jail. Mr. Drake testified that defendant admitted to him that he had abducted a woman from a clinic or hospital, drove her into the country south of Carbondale, raped her and "[m]ade her suck his dick."

It was stipulated at trial that the State offered to Mr. Drake's attorney a recommendation of a minimum sentence on Mr. Drake's forgery charge and a dismissal of his burglary charge in return for his testimony concerning conversations Mr. Drake had with defendant.

In surrebuttal, defendant presented the testimony of Ronald Driver and Kenneth Fortya who were also incarcerated with defendant in the Jackson County jail, Both testified that they could over hear a conversation in the defendant's jail cell and neither heard defendant admit his guilt. Defendant also testified in surrebuttal and denied that he had told Mr. Drake that he had committed the offenses in the case at bar.

The defendant's presentence report indicated, *inter alia*, that in 1966 defendant had been adjudicated delinquent for three car thefts

and breaking into two houses; in 1968 defendant's parole for the above offenses was revoked as a result of his commission of breaking and entering and criminal damage to property; in 1969 defendant's parole was again revoked because defendant had written a bad check; in 1970 defendant was convicted of theft; and in 1974 he was convicted of burglary.

At defendant's sentencing hearing defendant's wife testified that she and defendant supported four children and that since defendant's incarceration pending the resolution of the instant charges, his family had been forced to receive public aid.

The trial court sentenced defendant to concurrent terms of 20 years' imprisonment for each offense. In doing so, the trial court noted in aggravation defendant's prior history of delinquency and criminal activity, "the embarrassment, the humiliation and the danger" imposed on the victim; and the need to deterrence. In mitigation, the trial court found that some hardship would be imposed on defendant's family as a result of his incarceration.

■ The defendant first argues that it was reversible error for the State to cross-examine one of the defendant's character witnesses, Karen Vreeland, regarding defendant's prior arrests. The defendant maintains that he was denied a fair trial because the State improperly elicited evidence of other crimes and because the State utilized improper impeachment by evidence of defendant's prior bad acts. We agree with defendant that error occurred; however, we do not agree that defendant suffered such substantial prejudice as would warrant the reversal of his conviction. (*Cf. People v. Jordan* (1974), 18 Ill. App. 3d 133, 136, 309 N.E.2d 274, 277; *People v. Bost* (1980), 80 Ill. App. 3d 933, 950-51, 400 N.E.2d 734, 747-48.) Here, as in *Jordan*, we have a complainant with adequate opportunity to observe and identify her assailant and who gave police a reasonably adequate description of him. Additionally, the complainant's testimony was well corroborated. At the scene of the assault the police found the tape used to tie complainant's hands, the cloth with which defendant attempted to blindfold complainant, and complainant's underpants. Serology tests suggested that defendant was the assailant. Defendant also had an injury to a finger on his left hand which matched the description given by the complainant. We conclude that reversible error did not occur in the trial of this cause.

■ Furthermore, as in *Bost*, we have a situation where defendant, after making an objection, vigorously pursued the line of inquiry he had objected to. We have recognized that such conduct may amount to a waiver of the error for purposes of appeal. (80 Ill. App.

3d 933, 951-52, 400 N.E.2d 734, 748.) Here, defendant himself testified regarding prior arrests and defense counsel referred to such arrests numerous times in his closing argument. We find that the error was waived in the instant case.

■ Defendant next contends that the trial court erred by granting the State's motion *in limine* which sought to preclude the testimony of an expert witness on eyewitness testimony. Illinois courts have held that because the trustworthiness of eyewitness observations is not generally beyond the common knowledge and experience of the average juror, it is not a proper subject for expert testimony. (*People v. Johnson* (1981), 97 Ill. App. 3d 1055, 1069, 423 N.E.2d 1206, 1216; *People v. Brown* (1981), 100 Ill. App. 3d 57, 71-72, 426 N.E.2d 575, 584; *People v. Dixon* (1980), 87 Ill. App. 3d 814, 818-19, 410 N.E.2d 252, 256.) The trial court correctly followed the rule established in Illinois, and its decision granting the State's motion *in limine* was correct.

■ Finally, defendant maintains that his sentence was an abuse of discretion. In support of this contention he points to the fact that he has no history of violent offenses, has supported a wife and four children, has an adequate work history, was not an alcohol or drug user, and has close community and family ties. While these factors arguably support the imposition of a lighter sentence, they do not, in our opinion, indicate that the trial court abused its discretion in imposing the sentence which it did. The trial court properly noted as factors in aggravation that defendant's conduct caused or threatened serious harm, that defendant had a history of prior delinquency and criminal activity, and the necessity of deterring others from committing the same crime. (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3.2(a)(1), (a)(3), (a)(7).) It is not the function of a reviewing court to substitute its judgment regarding sentencing for that of the trial court. (*People v. Lykins* (1979), 77 Ill. 2d 35, 40, 394 N.E.2d 1182, 1185.) The standard of review of a sentence is whether the trial court abused its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 884.) In the instant case we find that no abuse of discretion occurred.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

JONES and KARNS, JJ., concur.