THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TIMOTHY M. SCHUNING, Defendant-Appellant.

Second District   No. 2—83—0802

Opinion filed July 19, 1984.

809

UNVERZAGT, J., dissenting.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Judith M. Pietrucha, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

In a jury trial, the defendant, Timothy M. Schuning, was found guilty of the offenses of rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1(a)) and unlawful restraint (Ill. Rev. Stat. 1981, ch. 38, par. 10—3(a)). The trial court entered a judgment of conviction with respect to the rape charge only, and subsequently sentenced the defendant to a seven-year term of imprisonment.

Defendant raises two issues on appeal: (1) whether the State failed to prove beyond a reasonable doubt that he committed the offense of rape; and (2) whether the trial court committed reversible error when it allowed the State to inform the jury, as impeachment evidence, that the defendant had been convicted of misdemeanor retail theft, for which he had received court supervision, and of criminal trespass to a motor vehicle.

At trial, Kathleen B., the complainant, testified that she had known the defendant for 2½ years prior to the occurrence of the incident in question and that they were friends. They had the same friends and saw each other often. She admitted that she had previously engaged in a single act of sexual intercourse with the defendant

in October 1981, in the basement of his parents' home in Lombard. She stated, in addition, that she had been at the defendant's residence many times before, which was located in the basement of his parents' home, and had stayed overnight in the house numerous times when the defendant's parents were not home. On those occasions the defendant and his brother and sometimes others were present in the home, but she spent those nights alone.

Late in the evening on October 6, 1982, the complainant telephoned the defendant to inquire how he was. When she learned he was not at home, she requested that the defendant return her call. According to the complainant, the defendant returned her call a short while later and invited her to his house. Because she did not want to walk in the dark, the defendant met her halfway.

They went to the basement of defendant's home, where they sat on a couch and talked, watched television, and drank a few beers. Eventually, the defendant began to tickle her, and she asked him to leave her alone. When the defendant continued to tickle her, she pulled back and told him to stop it. Then the defendant pushed her shoulders down and got on top of her. She struggled to free herself by trying to push the defendant away from her. At this point the defendant was sitting on her stomach, and his arms were holding down her shoulders. After the complainant told the defendant to leave her alone, he bit her on the right cheek. Then he told her to be quiet or else he would bite through her face.

The complainant related further that the defendant, who was still sitting on her stomach, turned his back toward her and began to undo her pants. She began to fight him, told him to leave her alone, and removed a comb from his pocket, using it to scratch him in the lower back. She told the defendant to leave her alone and to stop. After the defendant removed her pants and underpants, he turned around and got back on top of her. She was unable to get up. The defendant began to pinch the top of her breasts as he was lying on her. She placed her hands between her legs so the defendant could not do anything and told him again to leave her alone. The defendant bit her on the other cheek and told her to remove her hand. The defendant again bit her in the face, which hurt her. She did nothing because she was scared. Then the defendant had intercourse with her for a few minutes, during which time she tried to get away, and told the defendant to leave her alone.

The complainant dressed in a hurry, ran from the basement and immediately walked five or six blocks to the home of Dennis Phelps, a friend of hers. The complainant, who was crying, asked Phelps to help

her. After Phelps calmed her down and asked her what had happened, she told him she had been raped. Then Phelps took her to the police station.

The complainant stated that she was not free of defendant's control until after sexual intercourse had occurred, because he held her down throughout the ordeal. Also, she related that she did not scream because the defendant told her he would bite through her cheek if she yelled. She stated she did not scream because she was afraid the defendant would hurt her. The complainant testified that the defendant may have told her that his parents were asleep upstairs, but she did not know whether she should believe him. She did not see anyone in the house, including the defendant's parents. In addition, she stated that she was wearing earrings at the time of this incident and that she lost an earring clasp during the struggle. She related, also, that she had marks on her face, bruises on her body, and a scrape on her knee as a result of the present occurrence.

Dennis Phelps testified that the complainant knocked on his basement window at approximately 1:30 a.m. on October 7, 1982. She was crying a lot and would not talk at first. Phelps finally calmed her down, and the first thing the complainant said to him was "he raped me." He asked her if she wanted to go to the police station, and she did not want to do so at first. However, a short while later the witness took Kathleen to the police station. Phelps stated that Kathleen told him that she had been bitten, and Phelps noticed that the left side of her face was quite red.

Police officer Barbara Durnil, who transported the complaining witness to the hospital, observed circular marks in the cheek area on both sides of Kathleen's face. The witness related that when she first viewed the complainant, Kathleen did not appear to be hysterical. Kathleen told her about the incident. Kathleen informed Officer Durnil that family members were in the upstairs area of the Schuning home and that the defendant had told her his family was asleep upstairs.

Barbara Svestka, a nurse who worked in the emergency room of Good Samaritan Hospital in Downers Grove, observed the complainant shortly after the alleged rape occurred. At that time Kathleen, who appeared quiet, told her she had been raped in a basement. The witness noticed circular or oval marks in the form of a mouth on both of the complainant's cheeks and an abrasion on the right knee. There was no bruising of the skin or bleeding in the cheek area.

Dan Cuny, also a police officer, spoke with Kathleen at the hospital after the nurse had examined her. He described Kathleen as visibly

shaken and upset when he interviewed her. The officer observed what appeared to be bite marks on Kathleen's cheeks and an abrasion or scratch on her right knee; the skin on the cheeks was not broken or bleeding. In addition, he related that the complainant showed him bruises which she had in the chest area. Kathleen told him what happened in the basement of the Schuning home, and he thought the complainant informed him that the defendant's parents were asleep upstairs during the incident in question.

During the afternoon of October 7, Officers Cuny and Frank Partipilo visited the Schuning home to execute a search warrant and arrest warrant for defendant. After entering the home, the police officers began to go down the steps to the basement. There they announced that they were police officers and told the defendant to come out. They received no response. Officer Partipilo testified that he then found the defendant hiding behind a basement door. In addition, Cuny related that he recovered a comb from underneath the couch in the basement and also found the back of an earring on the floor near the couch.

The defendant testified that he had known Kathleen for three years. He returned her telephone call shortly after 11 p.m. on October 6. According to the defendant, Kathleen invited herself to his residence, and he agreed to the visit. After she knocked on the basement window, the defendant went upstairs, opened the back door, and told her to be quiet going down to the basement because his parents were asleep. The defendant maintained that he did not meet the complainant halfway between her residence and his.

The defendant acknowledged that the two of them drank a few beers, talked, and watched a movie. However, his version of the subsequent events in issue differs from that which the complainant related. According to the defendant, he began to tickle Kathleen, who did not object. They lay on the couch "making out" for a little while and then began to undress one another. He engaged in sexual intercourse with Kathleen, who at no time informed him that she was opposed to having sex with him or asked him to stop. He did not bite the complainant on the face and did not threaten to bite through her cheek if she screamed. In addition, he denied that Kathleen attacked him with a comb.

Defendant stated that after the completion of the sexual act, the complainant sat up and dressed herself. They sat around and finished their beers, and then he walked Kathleen to the back door, where she told him that she would talk to him later. He said he hid behind the door when the police arrived the next day because of a prior distaste-

ful encounter with the police a few years before.

Ramona Schuning, the defendant's mother, testified that Kathleen had visited the Schuning home on prior occasions and had stayed overnight a couple dozen times. She stated that the basement sofa was positioned below the area where she and her husband slept. At the time of the occurrence in issue, she was not awakened by any sounds and did not hear anything.

Following defendant's testimony, the trial court admitted into evidence certified copies of defendant's prior convictions for criminal trespass to a motor vehicle and retail theft not exceeding $150, the latter offense resulting in a disposition of court supervision from which he was subsequently discharged.

The defendant's first contention is that the State failed to prove beyond a reasonable doubt that he raped Kathleen. In particular, he argues that, although he did engage in sexual intercourse with the complainant at the time in question, forcible rape cannot be found in the present circumstances in light of the following facts: (1) that the complainant willingly engaged in sexual intercourse with the defendant on a prior occasion; (2) that the complaining witness "in effect invited herself over" to the defendant's residence and "then stayed with him until the early morning hours"; (3) that the defendant employed no weapons, but purportedly only threatened to bite her cheek; and (4) that Kathleen did not scream or call for help even though the defendant's parents were in the house. He concludes that the complainant's testimony was not clear and convincing and that substantial corroboration was lacking.

■■ ■ The well-settled rule of law is that the testimony of a rape victim, standing alone, is sufficient to sustain a conviction of rape if it is clear and convincing (*People v. Secret* (1978), 72 Ill. 2d 371, 376, 381 N.E.2d 285; *People v. Brown* (1984), 122 Ill. App. 3d 452, 454, 461 N.E.2d 71), even though the defendant's testimony contradicts hers. (*People v. Spencer* (1983), 119 Ill. App. 3d 971, 980, 457 N.E.2d 473.) However, if clear and convincing testimony is lacking, then corroboration is deemed necessary to sustain a rape conviction. (*People v. Sanchez* (1982), 110 Ill. App. 3d 893, 901, 443 N.E.2d 252.) Corroboration may be found in a prompt complaint or report of the occurrence (*People v. Secret* (1978), 72 Ill. 2d 371, 377, 381 N.E.2d 285), and in the victim's injury and emotional upset. *People v. Lucien* (1982), 109 Ill. App. 3d 412, 417, 440 N.E.2d 899.

■ Although a court of review has a special duty to examine the evidence with care in a rape case, this obligation does not permit it simply to substitute another view of the evidence for that found credi-

814

ble by the trier of fact. (*People v. Grover* (1983), 116 Ill. App. 3d 116, 122, 451 N.E.2d 587; *People v. Lucien* (1982), 109 Ill. App. 3d 412, 416, 440 N.E.2d 899.) The issue of the plausibility of the complainant's testimony is ultimately a matter of credibility, a question best determined by the triers of fact who heard the evidence and observed the demeanor of the witnesses. (*People v. Sanchez* (1982), 110 Ill. App. 3d 893, 901, 443 N.E.2d 252.) Thus, the existence of conflicting evidence alone will not warrant a reversal of the judgment entered below (*People v. Grover* (1983), 116 Ill. App. 3d 116, 122, 451 N.E.2d 587), and the court of review will set aside a conviction of rape only when the evidence is so palpably contrary to the findings or so unreasonable, improbable, or unsatisfactory that there is a reasonable doubt of the accused's guilt. *People v. Brown* (1984), 122 Ill. App. 3d 452, 455, 461 N.E.2d 71.

■ In this case the testimony of the complainant was clear, convincing, and corroborated by other evidence. The evidence that Kathleen was well acquainted with the defendant, had engaged in a single act of intercourse with him one year before, and had come to his house late at night are all circumstances for the trier of fact to resolve in determining the credibility of her version of the incident on the night in question as contrasted to that of the defendant. The jury could reasonably conclude the complainant was physically restrained and forcibly raped, even though she did not yell out, from evidence of red bite marks on her cheeks and an abrasion on her leg. There was corroborating testimony that she promptly complained to police and others of the rape after leaving defendant's home and was emotionally upset, factors tending to refute the defendant's assertion that she consented to his conduct. Evidence of defendant's hiding from the police is a circumstance tending to show consciousness of guilt. From a careful review of the record, we conclude that defendant was proved guilty of rape beyond a reasonable doubt.

■ Defendant's other contention on appeal is that over his objection the trial court erred in admitting into evidence, after he testified, two "conviction statements" for the purpose of impeaching his credibility as a witness. He contends that his prior conviction for criminal trespass to a vehicle (Ill. Rev. Stat. 1981, ch. 38, par. 21—2) was a misdemeanor conviction, not involving dishonesty or a false statement, inadmissible under the guidelines of *People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563, and that his purported prior "conviction" for retail theft not exceeding $150 (Ill. Rev. Stat. 1981, ch. 38, par. 16A—3(a)), for which he received court supervision, and was subsequently discharged, was not a conviction.

We consider first the admissibility for impeachment purposes of the defendant's prior conviction for criminal trespass to a vehicle. The decision of our supreme court in *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805, is dispositive of this issue. There it was specifically held that a conviction for criminal trespass to a vehicle, a misdemeanor, was not a crime of dishonesty or false statement as defined by statute, and did not fall under the provisions of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, which allow, in the discretion of the trial judge, the introduction of certain prior convictions for the purpose of attacking the credibility of a witness who testifies. (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 590-91, 363 N.E.2d 805.) The court in *Knowles* also rejected the same argument which the State makes in this appeal that the facts surrounding the witness' prior conviction must be looked at to determine whether a crime involves dishonesty. Only the conviction itself, for the offense as defined by the statute, is to be considered in making this determination. (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 590-91, 363 N.E.2d 805; see also *People v. Grayer* (1982), 106 Ill. App. 3d 324, 328-29, 435 N.E.2d 1196; *People v. Kellas* (1979), 72 Ill. App. 3d 445, 450, 389 N.E.2d 1382.) The defendant objected sufficiently below to this evidence, and the trial court erred in allowing into evidence this prior conviction for impeachment purposes.

■ We also conclude that the trial court erred in admitting a "conviction statement" of defendant's prior disposition in a retail theft case which resulted in court supervision and defendant's successful discharge therefrom. Successful completion of a disposition of supervision, which is provided for in section 5—6—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—1(c)), results in dismissal of the charges and no judgment of conviction is entered. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—1—21; *People v. Bushnell* (1984), 101 Ill. 2d 261, 266, 461 N.E.2d 980.) As only a conviction may be allowed to impeach and not an arrest, indictment, charge or actual commission of an offense (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 590-91, 363 N.E.2d 805), a disposition of court supervision successfully discharged is not a conviction which can be used for impeachment purposes. (See *People v. Miller* (1981), 101 Ill. App. 3d 55, 61, 427 N.E.2d 987; *People v. Kavanaugh* (1980), 85 Ill. App. 3d 783, 786-87, 408 N.E.2d 23.) The court below erred in admitting such a disposition relating to the retail theft charge.

Having concluded that the court below erred in admitting this evidence for impeachment purposes, we must consider whether this was harmless error as the State argues in the alternative.

■ In Illinois, the test for review of evidentiary error is that such error can be labeled harmless only if properly admitted evidence is so overwhelming that no fair-minded jury could reasonably have voted to acquit the defendant or, as stated differently, only if the record affirmatively shows that the error was not prejudicial. (*People v. Carlson* (1982), 92 Ill. 2d 440, 449, 442 N.E.2d 504.) The improper admission of a prior conviction of a defendant for impeachment purposes has been held to be harmless error (*People v. Vaughn* (1978), 56 Ill. App. 3d 700, 705, 371 N.E.2d 1248; *cf. People v. Gomez* (1980), 80 Ill. App. 3d 708, 711-12, 399 N.E. 2d 1368), and not plain error under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)). (*People v. Steele* (1984) 124 Ill. App. 3d 761.) In other decisions the improper introduction of a prior conviction was considered to be highly prejudicial and to warrant a new trial. (*People v. Stover* (1982), 89 Ill. 2d 189, 432 N.E.2d 262; *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805; *People v. Kavanaugh* (1980), 85 Ill. App. 3d 783, 408 N.E.2d 23.) The determination of harmless error must be analyzed on the particular facts of each case considering the trial record as a whole. *United States v. Hasting* (1983), 461 U.S. 499, 509, 76 L. Ed. 2d 96, 106, 103 S. Ct. 1974, 1980.

■ The question before us here is whether, absent this improper impeachment evidence, the properly admitted evidence is so overwhelming that no fair-minded jury could reasonably have voted to acquit the defendant. Evidence of a defendant's prior conviction is admitted as it may affect his believability as a witness, not as evidence of guilt (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695), and the jury was so instructed in this case. (See Illinois Pattern Jury Instruction, Criminal, No. 3.13 (2d ed. 1981).) The credibility of the defendant was particularly relevant here as the only two direct witnesses to the incident in question, the defendant and the complainant, gave opposite testimony on the issue of consent to intercourse. Nevertheless, we conclude that the prior misdemeanor conviction for criminal trespass to a vehicle and the disposition of retail theft not exceeding $150 have little significance when compared to the credible direct testimony of the rape by the complainant and the substantial corroborating evidence of the rape by other neutral witnesses, who testified to signs of injury to the complainant and to her emotional upset and prompt complaint of the rape. Where a complainant's testimony is well corroborated, reversible error will not be found. (See *People v. Perruquet* (1983), 118 Ill. App. 3d 339, 343, 454 N.E.2d 1051.) The two prior offenses are relatively minor offenses and are not of the same nature as the rape offense. The prior offenses were not "high-

lighted" before the jury in final argument by the prosecutor and were mentioned only once. (Compare *People v. Kavanaugh* (1980), 85 Ill. App. 3d 783, 787-88, 408 N.E.2d 23.) We note also that mention was made of the defendant's "scrapes" with the law in his opening statement and his own direct testimony prior to introduction of these two misdemeanor offenses.

While the trial judge has the primary responsibility to know what prior offenses are admissible for impeachment purposes under *People v. Montgomery,* and its progeny, and should exercise considerable care in this function, we do not consider the error committed here, under this entire record, to have been so prejudicial as to affect the outcome of this trial and warrant reversal.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P.J., concurs.

JUSTICE UNVERZAGT, dissenting:

This case should be reversed and remanded for a new trial because the defendant was prejudiced by the introduction of evidence of prior misdemeanor convictions.

In this case, the trial court allowed the State to introduce evidence of the defendant's previous conviction of retail theft under $150 (Ill. Rev. Stat. 1981, ch. 38, par. 16A—10(1)) and also evidence of a prior conviction of criminal trespass to a motor vehicle (Ill. Rev. Stat. 1981, ch. 38, par. 21—2).

I agree with the majority opinion that it was error for the trial court to admit for purposes of impeachment the defendant's prior conviction for criminal trespass to a vehicle. (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585.) I also agree with the majority that the admission of defendant's prior retail theft "conviction" was error because the defendant was sentenced to court supervision and successfully completed supervision. The order terminating supervision is akin to a judgment of acquittal. *People v. Tarkowski* (1981), 100 Ill. App. 3d 153, 161.

Where I part company with the majority is their holding that the admissions of these convictions were harmless error. I am of the opinion it was prejudicial and, therefore, reversible error.

A reviewing court has a special duty to examine the evidence with care in a rape case. An examination of the evidence in this case re-

veals it to be closely balanced.

The crucial question whether the act of intercourse was forcible or consensual was ultimately one of credibility. (*People v. Coe* (1978), 67 Ill. App. 3d 552, 562.) In carrying out the truth-finding process, the jury necessarily had to gauge, to a certain extent, the credibility of the defendant as a witness; in addition, given the nature of this case and the conflicting evidence which the complainant and the defendant presented at trial, the jury's verdict may well have turned, at least in part, upon the testimonial credibility of the defendant. As we have previously noted, evidence of a prior conviction can be highly prejudicial. (*People v. Kavanaugh* (1980), 85 Ill. App. 3d 783.) Improper admission of two prior "convictions" throws the scale of justice completely out of balance.

The majority assertion of other corroborating evidence in an attempt to minimize the error here is unconvincing.

I would reverse.